**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PRISONERS' LEGAL SERVICES OF NEW YORK,
*et al.*,

                Plaintiffs,

         v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
*et al.*,

            Defendants.

25 Civ. 1965 (GHW) (VF)


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO TRANSFER


JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2761


CHRISTOPHER K. CONNOLLY
Assistant United States Attorney
    – Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................2

    A.    Plaintiffs' Complaint............................................................................................2

    B.    Judge Woods' Order to Show Cause and Plaintiffs' Response ............................3

ARGUMENT— THE COURT SHOULD TRANSFER THIS MATTER TO THE WESTERN
DISTRICT OF NEW YORK ......................................................................................................5

    A.    The Operative Facts All Occurred in the Western District of New York...............6

    B.    The Western District of New York Is the More Convenient Forum
          for Witnesses.........................................................................................................9

    C.    The Western District of New York Is the More Convenient Forum
          for the Parties ......................................................................................................12

    D.    The Location of Sources of Proof Favors Transfer to the Western District
          of New York .........................................................................................................13

    E.    This Forum's Familiarity with the Governing Law, the Availability of Process
          to Compel Attendance of Unwilling Witnesses, and the Relative Means of the
          Parties Do Not Weigh Against Transfer ...............................................................14

    F.    The Interests of Justice and Totality of the Circumstances Support Transfer
          to the Western District of New York ....................................................................14

    G.    Plaintiffs' Choice of Venue is Entitled to Diminished Weight.............................15

CONCLUSION......................................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(s)**

*Alpha Industries, Inc. v. Alpha Clothing Co. LLC*,
    No. 21 Civ. 87 (KPF), 2021 WL 2688722 (S.D.N.Y. June 30, 2021) ................................ 7

*Burgos v. United States*,
    16 Civ. 7091 (RA), 2017 WL 2799172 (S.D.N.Y. June 27, 2017) ................................ 5, 6

*Corley v. United States*,
    11 F.4th 79 (2d Cir. 2021) ................................................................................ 5

*Daniel v. American Bd. of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005) ............................................................................ 8

*Dickerson v. Novartis Corp.*,
    315 F.R.D. 18 (S.D.N.Y. 2016) ...................................................................... 15

*DiPizio v. Empire State Development Corp.*,
    No. 15 Civ. 5339 (GHW), 2015 WL 5824704 (S.D.N.Y. Oct. 5, 2015) ................ 9, 12, 14

*Dynamic Data Technologies, LLC v. HTC Corp.*,
    No. 18 Civ. 10180 (GHW), 2019 WL 2433549 (S.D.N.Y. June 11, 2019) ............... *passim*

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
    928 F. Supp. 2d 735 (S.D.N.Y. 2013) ............................................................... 15

*Florida Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) .................................................................................... 9, 13

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
    195 F. Supp. 3d 613 (S.D.N.Y. 2016) ............................................................ 9, 10, 11

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006) ............................................................... 13

*Giordano v. Offray*,
    No. 18 Civ. 6816 (GHW), 2019 WL 13252609 (S.D.N.Y. May 21, 2019) ................ 8, 10

*Gordon v. State Farm Fire & Casualty Co.*,
    No. 24 Civ. 8392 (GHW), 2025 WL 1079096 (S.D.N.Y. Apr. 10, 2025) ................ 6, 7, 9

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ...................................................................... 13

*Invivo Research, Inc. v. Magnestic Resonance Equipment Corp.*,
    119 F. Supp. 2d 433 (S.D.N.Y. 2000) ............................................................... 13

*It's a 10, Inc v. PH Beauty Labs, Inc.*,
    718 F. Supp. 2d 332 (S.D.N.Y. 2010) ............................................................... 14

*Jenkins v. Miller*,
    983 F. Supp. 2d 423 (D. Vt. 2013) ....................................................................... 8

*Kalman v. Cortes*,
    646 F. Supp. 2d 738 (E.D. Pa. 2009) ................................................................... 8

*Keitt v. N.Y. City*,
    882 F. Supp. 2d 412 (S.D.N.Y. 2011)................................................................. 13

*Larew v. Larew*,
    No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616 (S.D.N.Y. Jan. 10, 2012)..................... 9

*N.Y. Marine & General Insurance Co. v. Lafarge North America, Inc.*,
    599 F.3d 102 (2d Cir. 2010) ............................................................................... 6

*Payless Shoesource, Inc. v. Avalon Funding Corp.*,
    666 F.Supp.2d 356 (E.D.N.Y. 2009) ..................................................................11

*Robert F. Kennedy Human Rights v. ICE*,
    22-CV-00929-LJV-HKS, 2024 WL 3968822 (W.D.N.Y. Aug. 28, 2024)........................ 15

*Ruiz ex rel. E.R. v. United States*,
    No. 13 Civ. 1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) .......... 12

*Schuyler v. Sun Life Assurance Co. of Canada*,
    No. 20 Civ. 10905 (RA) (BCM), 2021 WL 5853991 (S.D.N.Y. Dec. 9, 2021)........ 6, 9, 16

*SEC v. Hill Int'l, Inc.*,
    No. 20 Civ. 447 (PAE), 2020 WL 2029591 (S.D.N.Y. Apr. 28, 2020) .......................... 7, 8

*Sentegra, LLC v. ASUS Computer Int'l*,
    15 Civ. 3768 (GHW), 2016 WL 3093988 (S.D.N.Y. June 1, 2016) ................................ 6

*Simpson v. Rodas*, No. 10 Civ. 6670 (CS),
    2012 WL 4354832 (S.D.N.Y. Sept. 21, 2012) ................................................................ 16

*Williams v. City of New York*,
    03 Civ. 5342 (RWS), 2006 WL 399456 (S.D.N.Y. Feb. 21, 2006)................................. 15

**STATUTES**

28 U.S.C. § 1391 .................................................................................................... 6

28 U.S.C. § 1404 ............................................................................................. *passim*

## PRELIMINARY STATEMENT

Defendants the U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, in her official capacity as Secretary of DHS; Joseph E. Freden, in his official capacity as Deputy Field Office Director, Buffalo Federal Detention Facility; and Thomas Brophy, in his official capacity as ICE Enforcement and Removal Operations Buffalo Field Office Director, by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to transfer this matter to the U.S. District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a).

As the presiding district judge (Gregory H. Woods, J.) has recognized, this case arises entirely from alleged conduct at the Buffalo Federal Detention Facility ("BFDF"), which is located in the Western District of New York. Plaintiffs, three legal services organizations, allege that a policy currently in place at BFDF permits ICE officers working at BFDF to inspect, copy, and retain legal mail sent to and from individuals who are detained at BFDF. Plaintiffs allege that this BFDF policy is arbitrary and capricious, and thus should be set aside under the Administrative Procedure Act ("APA"), and that it violates their First Amendment rights insofar as it chills their ability to speak freely with their clients who are detained at BFDF.

Transfer is warranted here because all the operative facts alleged in plaintiffs' complaint occurred in the Western District of New York. Moreover, litigating this case in the Western District would, on balance, be more convenient for both party and non-party witnesses. The location of documents and other means of proof weighs at least slightly in favor of transfer, and the interests of justice and totality of the circumstances tilt strongly in favor of transfer given that all of the relevant issues in this case occurred in the Western District. Against these factors, plaintiffs' choice

of this District—which otherwise has no connection to the underlying dispute—is measurably diminished.  Accordingly, defendants' motion to transfer should be granted.

## BACKGROUND

### A.    Plaintiffs' Complaint

Plaintiffs Prisoners' Legal Services of New York ("PLSNY"), Robert F. Kennedy Human Rights ("RFK Human Rights"), and the New York Civil Liberties Union ("NYCLU") are "nonprofits who provide *pro bono* legal services," Compl. (ECF No. 1) ¶ 1, including to individuals detained at BFDF, *see id.* ¶¶ 8-10.  According to the complaint, in November 2023, defendants implemented a "legal mail policy by which officers working at BFDF . . . inspect, copy, and retain all legal mail sent to or from BFDF, including protected confidential communications between attorneys or their clients." *Id.* ¶ 2.  Plaintiffs allege that defendants implemented the policy "to address unspecified safety and security concerns" at BFDF.  *Id.*; *see also id.* ¶ 24.  Defendants "temporarily lifted this policy" in March 2024, "but in November 2024 they re-instituted the policy and expanded its scope to provide for the inspection, copying, and retention of all legal documents transmitted to individuals detained at BFDF *by any means*, including documents given in-person by attorneys meeting with clients at BFDF." *Id.* ¶ 3 (emphasis in original).

The complaint primarily alleges facts concerning the operation of the policy at BFDF.  For example, "[u]nder BFDF's revised legal mail policy, outgoing mail is collected by an ICE officer when visiting a unit at BFDF." *Id.* ¶ 15.  "[D]etained individuals" at BFDF "are present only for the making of any copies of their incoming legal mail." *Id.*  "For incoming mail, ICE officers conduct inspections of legal mail by first calling an entire unit of detained individuals to BFDF's mail processing unit," where an ICE officer "opens and reviews the legal mail of each detained

individual." *Id.* ¶ 16.  The mail is then copied; ICE retains the original mail and provides the copy to the individual.  *See id.* ¶¶ 17-19.  Plaintiffs allege "over a dozen instances observed by PLSNY's detained client" where "ICE officers have read an individual's legal mail while copying the mail." *Id.* ¶ 20.  Under the allegedly expanded policy reinstituted in November 2024, "ICE officers [also] confiscate legal documents during in-person meetings" at BFDF "by asking the visiting legal representative to put the legal documents in an envelope" and then taking the documents to "another wing of the BFDF facility" to make copies.  *Id.* ¶ 29.

Plaintiffs assert that the BFDF legal mail policy "has interfere[d] with [their] ability . . . to communicate freely and effectively with their clients."  *Id.* ¶ 32.  They allege that the policy violates their First Amendment right to privileged and confidential communications with their clients at BFDF, *see id.* ¶¶ 39-42, and also that the policy should be set aside under the APA because it does not comply with ICE's national standards for the treatment of detained individuals' legal mail, *see id.* ¶¶ 43-45.  Plaintiffs ask the Court, among other things, to "[e]njoin Defendants from further implementation of its current legal mail policy" at BFDF, and "[r]etain jurisdiction over this matter under Defendants demonstrate full compliance with the Court's order."  *Id.* at 14 (Prayer for Relief).

**B.    Judge Woods' Order to Show Cause and Plaintiffs' Response**

On March 11, 2025, Judge Woods entered an order directing plaintiffs to show cause "why this action should not be transferred to the Western District of New York."  Order dated Mar. 11, 2025 ("Order to Show Cause") (ECF No. 8) 3.  Judge Woods stated that "[t]his entire case . . . arises from alleged conduct at the Buffalo Federal Detention Facility ('BFDF') in Genesee County, which lies in the Western District of New York."  *Id.* 2 (citations omitted).  Accordingly, Judge Woods observed that most of the factors courts consider when deciding if transfer is appropriate

likely weighed in favor of transfer: "[a]t a minimum, the convenience of the witnesses, the locus of operative facts, the location of relevant documents and the relative ease of access to sources of proof, and trial efficiency all appear to favor a transfer to the Western District." *Id.* (quotation marks omitted). Judge Woods further suggested that the weight ordinarily afforded to a plaintiff's choice of forum was "diminished substantially" here because "the operative facts in this case occurred in the Western District, not the Southern District," and "only one of the three named plaintiffs is alleged to reside in the Southern District." *Id.* 2-3.

Plaintiffs responded to the order to show cause on April 4, 2025. ECF Nos. 21-24. They argued primarily that their choice of forum is entitled to deference because two plaintiffs— NYCLU and RFK Human Rights—"are at home in this District under [28 U.S.C.] § 1404." Pls.' OSC Response Br. (ECF No. 21) 6-8. Plaintiffs also asserted that "the chilling effects suffered by the NYCLU and RFK Human Rights" as a result of the BFDF mail policy "occurred in this forum." *Id.* 8-9. Specifically, "[t]he NYCLU's and RFK Human Rights' attorneys and case managers in Manhattan are unable to communicate with their BFDF-detained clients due to Defendants' policy on inspecting, copying, and retaining legal mail sent to and from Manhattan." *Id.* 8. Finally, plaintiffs argued that the remaining factors either "weigh against transfer or are otherwise neutral." *See id.* 9-13.

In an order dated April 6, 2025, Judge Woods stated that "[t]he Court will not take further action on the order to show cause at this time." Order dated Apr. 6, 2025 (ECF No. 25). Judge Woods explained that "the Court has not determined that this case should not be transferred to the Western District of New York," but that it "decline[d] to do so now on its own initiative." *Id.* Rather, Judge Woods stated that he would "consider any motion to transfer brought by a defendant in this case separately." *Id.*

4

Also on April 6, 2025, Judge Woods referred this matter to this Court for general pretrial proceedings, including "non-dispositive pretrial motions." Referral Order, dated Apr. 6, 2025 (ECF No. 26). On April 21, 2025, this Court endorsed the parties' proposed schedule for defendants' motion to transfer and extended the deadline for defendants to answer or otherwise respond to the complaint. Memo Endorsement dated Apr. 21, 2025 (ECF No. 29).

## ARGUMENT

## THE COURT SHOULD TRANSFER THIS MATTER TO THE WESTERN DISTRICT OF NEW YORK

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (quotation marks omitted).

In deciding a motion to transfer, courts engage in a two-part inquiry. *See, e.g.*, *Burgos v. United States*, 16 Civ. 7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017). "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Id.* (quotation marks omitted). "Second, the court must . . . determine whether transfer is appropriate." *Id.* (quotation marks omitted). To determine whether transfer is appropriate, courts in this District consider the following factors:

> (1) the locus of operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Schuyler v. Sun Life Assurance Co. of Canada*, No. 20 Civ. 10905 (RA) (BCM), 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021). The party requesting transfer bears the burden of establishing that transfer is warranted by clear and convincing evidence. *See id.* at *2 (citing *N.Y. Marine & General Insurance Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)). But "[t]he list of factors is not exhaustive," and "weighing the balance is essentially an equitable task left to the Court's discretion." *Dynamic Data Technologies, LLC v. HTC Corp.*, No. 18 Civ. 10180 (GHW), 2019 WL 2433549, at *2 (S.D.N.Y. June 11, 2019) (Woods, J.) (quotation marks omitted).

Here, at the first part of the inquiry, this action could have been brought in the Western District of New York, both because "defendant[s] in the action reside[]" in that District and because "a substantial part of the events or omissions giving rise to the claim[s] occurred" there. 28 U.S.C. § 1391(e)(1). At the second part of the inquiry, transfer is appropriate because the relevant factors weigh decidedly in favor of the Western District as the appropriate venue for plaintiffs' challenge to the BFDF mail policy.

## A.    The Operative Facts All Occurred in the Western District of New York

Here, "[t]he factor that weighs most heavily in favor of transfer is the locus of operative facts." *Gordon v. State Farm Fire & Casualty Co.*, No. 24 Civ. 8392 (GHW), 2025 WL 1079096, at *4 (S.D.N.Y. Apr. 10, 2025) (Woods, J.). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Sentegra, LLC v. ASUS Computer Int'l*, 15 Civ. 3768 (GHW), 2016 WL 3093988, at *5 (S.D.N.Y. June 1, 2016) (quotation marks omitted). "The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Alpha Industries, Inc. v. Alpha Clothing Co. LLC*, No. 21 Civ. 87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021) (quotation marks omitted).

As Judge Woods observed, "[t]his entire case . . . arises from alleged conduct at the Buffalo Federal Detention Facility . . . in the Western District of New York."  Order to Show Cause 2.  Indeed, virtually every factual allegation in the complaint involves events at BFDF.  This includes allegations concerning: BFDF's treatment of outgoing mail under the policy as initially implemented in November 2023, *see* Compl. ¶ 15; BFDF's treatment of incoming mail under the initial policy, *see id.* ¶¶ 16, 17; BFDF's copying of legal mail, *see id.* ¶¶ 18, 19; instances in which a PLSNY client detained at BFDF observed ICE officers reading individuals' legal mail, *id.* ¶ 20; ICE's placement of legal mail in individuals' property bins, *id.* ¶ 21, including a specific allegation that a PLSNY client detained at BFDF was not allowed to witness his legal mail being placed in his bin, *id.* ¶ 22; reasons for the policy purportedly provided by the "BFDF Assistant Field Office Director," *id.* ¶¶ 24, 25; ICE's treatment of legal mail at BFDF during the temporary suspension of the policy, *id.* ¶ 26; the reinstatement and "expansion" of the policy at BFDF, *id.* ¶¶ 27, 28; and the confiscation and copying of legal documents during in-person meetings at BFDF under the expanded policy, *see id.* ¶¶ 29, 30.  Based on these allegations, plaintiffs assert that they "have refrained from sending confidential communications by mail or transmitting confidential documents when visiting clients at BFDF in-person."  *Id.* ¶ 30.

By contrast, the complaint "does not allege any facts that took place in the Southern District of New York."  *Gordon*, 2025 WL 1079096, at *4; *see also id.* ("This factor 'substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York.'" (quoting *SEC v. Hill Int'l, Inc.*, No. 20 Civ. 447 (PAE), 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020))).  Notably, plaintiffs' response to the order to show cause never directly addresses the locus of operative facts component of the transfer analysis.  At most, they assert that the First Amendment rights of two of the plaintiff organizations (NYCLU and RFK

Human Rights) were "chilled" in this District because relevant "attorneys and case managers" are located in Manhattan.  Pls.' OSC Response 8.  But the complaint lacks any similar allegations. *See, e.g.*, Compl. ¶¶ 32-38 (alleging that "defendants' policy interferes with the organizations' provision of legal services" without making any allegations about where relevant members of the organizations are located).  And in any event, the law does not support the conclusion that venue is proper in this District merely because certain plaintiffs' attorneys and case managers are located here.[1]  As plaintiffs acknowledge, "a First Amendment plaintiff 'suffers harm only where the speech would have taken place.'"  *Id.* (quoting *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009)).  In the case of legal mail sent to or by individuals detained at BFDF, *see* Compl. ¶¶ 15-23—and particularly in the case of documents provided during in-person meetings at BFDF, *see id.* ¶¶ 28, 29—that speech would have taken place, and thus the relevant harm occurs, in the Western District of New York.  Moreover, "[t]he venue inquiry 'focus[es] on relevant activities of the defendant, not of the plaintiff.'"  *Jenkins v. Miller*, 983 F. Supp. 2d 423, 464 (D. Vt. 2013) (quoting *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005)); *accord Giordano v. Offray*, No. 18 Civ. 6816 (GHW), 2019 WL 13252609, at *2 (S.D.N.Y. May 21, 2019) (Woods, J.) ("to the extent that Defendant acted in a way that infringed Plaintiff's trademark, his conduct occurred in Pasadena, California, not New York"; locus of operative fact was therefore California).  Here, with the possible exception of a decision made at ICE headquarters in Washington, D.C., to authorize BFDF's mail policy, *see* Pls.' OSC Response 3—an allegation that does not appear in the complaint—all the conduct alleged by plaintiffs giving rise to their claims occurred at BFDF, in the Western District of New York.  None of it occurred in this District.

---

[1] Plaintiffs admit that "PLSNY has suffered harm in the Northern and Western Districts of New York," not in this District.  Pls.' OSC Response 8-9.

"The complaint clearly alleges that the Western District is the location of operative facts." *DiPizio v. Empire State Development Corp.*, No. 15 Civ. 5339 (GHW), 2015 WL 5824704, at *7 (S.D.N.Y. Oct. 5, 2015) (Woods, J.) (transferring case to Western District where conspiracy allegations were "rooted in" that District despite allegations that certain underlying conduct occurred at offices in the Southern District). Accordingly, "[t]his factor substantially favors transfer from this district." *Gordon*, 2025 WL 1079096, at *4 (quotation marks omitted).

## B.    The Western District of New York Is the More Convenient Forum for Witnesses

The convenience of witnesses also favors transfer to the Western District.[2] "Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Schuyler*, 2021 WL 5853991, at *3 (quotation marks omitted). Courts must consider the "materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) (quotation marks omitted). Moreover, although the party seeking transfer is sometimes required to identify potential witnesses who would be inconvenienced by proceeding in the current forum, where—as here—the moving party "seeks a transfer 'on account of several factors, his failure to specify key witnesses and their testimony is not fatal.'" *Gordon*, 2025 WL 1079096, at *5 (quoting *Larew v. Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012)).

In this case, "[a] corollary" to the locus of operative facts analysis above "is that to the extent witnesses . . . are identified, they will likely reside in, and be subject to service of process

---

[2] In addressing this and other factors germane to discovery issues, defendants reserve their rights to challenge any discovery plaintiffs seek, particularly insofar as their claims arise under the APA. *See, e.g.*, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (in APA cases, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court").

in, the [Western District of New York], and find it more convenient to testify in their home district."
*Giordano*, 2019 WL 13252609, at *2. Based on plaintiffs' claims, virtually all relevant government witnesses—in particular the ICE officers at BFDF who allegedly perform the inspection, copying, and retention of incoming and outgoing legal mail, as well as the copying and retention of documents during in-person meetings—will be located in the Western District of New York. *See* Compl. ¶¶ 15-29. "[C]ontractors"—as opposed to government employees—"who staff BFDF," Pls.' OSC Response 1, will also be located in that District. So too will supervisory officials with knowledge of the reasons for the implementation of the policy and details concerning how the policy operates, whose testimony would therefore be relevant to the government's defenses in this litigation. *See* Compl. ¶¶ 24, 25 (alleging statements by the "BFDF Assistant Field Office Director"); Exhibit to Declaration of Sarah T. Gillman, dated Apr. 3, 2025 (ECF No. 22-1) (copy of email correspondence between plaintiffs and BFDF Assistant Field Office Director regarding the policy).

Plaintiffs' attempt to shift the locus of relevant government testimony to Washington, D.C., *see* Pls.' OSC Response 10, ignores the allegations in the complaint, which focus entirely on BFDF and never describe any actions in Washington. And even to the extent testimony from government witnesses located in Washington, D.C., is warranted, that neither renders this District (in which *no* likely government witnesses are located) convenient nor detracts from the convenience of the Western District for witnesses who work at BFDF. The "materiality, nature, and quality" of those witnesses' potential testimony is plain from the face of the complaint. *Freeplay Music*, 195 F. Supp. 3d at 617.

Plaintiffs' remaining arguments concerning convenience for witnesses are also unavailing. Echoing their locus of operative facts claims, they assert that "NYCLU and RFK Human Rights

suffered an unconstitutional chilling of their free speech rights in Manhattan," and that "[t]his District is also a convenient forum for PLSNY."  Pls.' OSC Response 10.  But those arguments do not demonstrate that the Western District would be inconvenient for plaintiffs' witnesses, especially since at least some relevant employees are located within that District.  *See* Declaration of Jillian Nowak, dated Mar. 28, 2025 ("Nowak Decl.") (ECF No. 23) ¶ 3 ("Roughly half of PLSNY's immigration case handlers are located in the Buffalo office.").  Furthermore, attorneys and case handlers from all three plaintiff organizations represent individuals detained at BFDF and therefore travel to and conduct business within the Western District, as evidenced by, among other things, plaintiffs' allegations concerning ICE's copying of documents during in-person visits.  *See* Nowak Decl. ¶¶ 7, 8; Declaration of Sarah T. Gillman, dated Apr. 3, 2025 (ECF No. 22) ¶ 11; Declaration of Amy Belsher, dated Apr. 1, 2025 (ECF No. 24) ¶¶ 4, 8.  By contrast, none of the government's witnesses are located here.  Plaintiffs' analysis of this factor also does not account for their potential client witnesses, who, to the extent they are still detained (and perhaps also to the extent they have been released), would also be located in the Western District.  *See* Compl. ¶¶ 20, 22 (allegations concerning actions witnessed by PLSNY clients detained at BFDF).

At bottom, the "materiality, nature, and quality" of witnesses who are either located in the Western District or who may readily travel there supports transfer.  *Freeplay Music*, 195 F. Supp. 3d at 617.  That is particularly true with respect to two categories of potential non-party witnesses: government contractors and individuals who are currently detained at BFDF.  *See Payless Shoesource, Inc. v. Avalon Funding Corp.,* 666 F. Supp. 2d 356, 364 (E.D.N.Y. 2009) (inconvenience of employees or agents of the parties does not weigh as heavily as inconvenience of non-party witnesses); *accord DiPizio*, 2015 WL 5824704, at *6.  And the parties have not

identified *any* potential government witnesses located in this District.  Accordingly, this factor also supports transfer to the Western District.

## C.    The Western District of New York Is the More Convenient Forum for the Parties

The convenience of the parties also favors transfer for many of the same reasons as the convenience of witnesses.  "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant."  *Dynamic Data Technologies*, 2019 WL 2433549, at *4.  As discussed above, with the possible exception of witnesses located in Washington, D.C., all of the potential government employee witnesses are located in the Western District of New York.  That includes two of the named individual federal defendants: Joseph E. Freden, the BFDF Deputy Field Office Director, and Thomas Brophy, the ICE Enforcement and Removal Operations Buffalo Field Office Director.  *See* Compl. ¶¶ 14, 15.  Moreover, at least some potential plaintiff witnesses are also located in the Western District, Nowak Decl. ¶ 3, and plaintiffs' employees travel to the Western District in connection with their representation of clients who are detained there, *see id.* ¶¶ 7, 8; Gillman Decl. ¶ 11; Belsher Decl. ¶¶ 4, 8.

The fact that some defendant witnesses "are likely federal officials and employees," Pls.' OSC Response 10, does not change the analysis.  While courts sometimes presume that government employees are available in any venue, they also recognize the burden on the government to produce witnesses for depositions and trial in other districts.  *See, e.g.*, *Ruiz ex rel. E.R. v. United States*, No. 13 Civ. 1241 (KAM) (SMG), 2014 WL 4662241, at *11-*13 (E.D.N.Y. Sept. 18, 2014) (transferring FTCA case alleging improper detention at Dulles International Airport to Eastern District of Virginia when, among other things, none of the government agents who had firsthand knowledge of the events resided in New York).  Indeed, that burden is

particularly significant here, where no government witnesses are located in this District. Furthermore, to the extent plaintiffs' asserted burden from transfer to the Western District stems from "pursuing this current litigation in [their] own right," Gillman Decl. ¶ 13—*i.e.*, from acting as counsel for the plaintiffs rather than as parties—that is not a proper factor for the Court to consider, *see Invivo Research, Inc. v. Magnestic Resonance Equipment Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000) ("the convenience of counsel is not a proper factor to consider on a motion to transfer"); *accord Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006).

Because the increased convenience to defendants of proceeding in the Western District outweighs any increased inconvenience for plaintiffs, this factor also supports transfer. *Dynamic Data Technologies*, 2019 WL 2433549, at *4.

## D.    The Location of Sources of Proof Favors Transfer to the Western District of New York

The location of documents and other sources of proof also tips in favor of transfer. As plaintiffs observe, "'[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.'" Pls.' OSC Response 12 (quoting *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459 (S.D.N.Y. 2011)). "However, 'it is improper to ignore [it] entirely.'" *Data Technologies*, 2019 WL 2433549, at *6 (quoting *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011)). And here, because one of plaintiffs' claims arises under the APA, defendants will be required to compile and certify an administrative record. *See Florida Power & Light*, 470 U.S. at 743. Given the nature of plaintiffs' claims, many if not most of the records that comprise an administrative record will be located in the Western District, where the BFDF mail policy was implemented and where issues giving rise to its implementation occurred. *See, e.g.*, Compl. ¶¶ 13-31. By contrast, "plaintiffs do not argue that any relevant documents or

sources of proof are located [in or] close to the Southern District." *DiPizio*, 2015 WL 5824704, at *7. Accordingly, this factor also weighs, however "slightly," in favor of transfer. *Id.*

### E.    This Forum's Familiarity with the Governing Law, the Availability of Process to Compel Attendance of Unwilling Witnesses, and the Relative Means of the Parties Do Not Weigh Against Transfer

Three factors—this forum's familiarity with the governing law, the availability of process to compel attendance of unwilling witnesses, and the relative means of the parties—are, at most, neutral with respect to the proper venue for this action.   "[T]his Court is familiar with the law governing Plaintiffs' First Amendment and APA claims."  Pls.' OSC Response 13.  And because process would be available in both Districts to compel the attendance of unwilling witnesses, *see* Pls.' OSC Response 11, that factor also does not play a role in this Court's analysis.   Finally, although plaintiffs suggest that the relative means of the parties weighs against transfer, *see id.* 12, they do not carry their burden to "offer documentation to show that transfer . . . would be unduly burdensome to [their] finances," *It's a 10, Inc v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (quotation marks omitted).  Rather, they largely conflate the alleged financial and time burdens of litigating this case in the Western District with burdens allegedly occasioned by "the continuation of BFDF's legal mail policy."  Belsher Decl. ¶¶ 9, 10.  At most, the Court should conclude that this factor does not shed meaningful light on the transfer analysis.

### F.    The Interests of Justice and Totality of the Circumstances Support Transfer to the Western District of New York

By contrast, the interests of justice and the totality of the circumstances weigh strongly in favor of transfer.  Transfer to the district where the operative events occurred serves "the interests of justice."  *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (quotation marks omitted).  Here, as explained above, virtually all the events alleged in the complaint occurred in the Western District.  *See* Compl. ¶¶ 13-31.  Transfer also

14

would not hinder judicial efficiency because "the case remains in the early stages of litigation" and "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 32-33 (S.D.N.Y. 2016) (granting motion to transfer).

Indeed, judicial efficiency could be facilitated by transfer given that a habeas action pending in the Western District, in which the petitioner is represented by two of the plaintiff organizations, also raises issues concerning BFDF's mail policy. *See K.K. v. Garland et al.*, No. 6:23-cv-6281 (FPG) (W.D.N.Y.); *cf. Williams v. City of New York*, 03 Civ. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) ("courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative" (citing cases)). More broadly, given BFDF's location, the judges of the Western District frequently adjudicate issues relating to the facility. *See, e.g.*, *Robert F. Kennedy Human Rights v. ICE*, 22-CV-00929-LJV-HKS, 2024 WL 3968822, at *1 (W.D.N.Y. Aug. 28, 2024) (order in Freedom of Information Act case brought by two of the plaintiff organizations seeking "records from [ICE] regarding the treatment of immigrants detained at the Buffalo Service Processing Center ('Batavia'), New York State's largest immigrant detention facility").

Because "[t]his entire case . . . arises from alleged conduct at the Buffalo Federal Detention Facility . . . in the Western District of New York," Order to Show Cause 2, the "totality of the circumstances" supports transfer, *Schuyler*, 2021 WL 5853991, at *3.

## G.    Plaintiffs' Choice of Venue is Entitled to Diminished Weight

Finally, based on the foregoing, plaintiffs' choice of venue in this District is entitled to "diminished" weight. Order to Show Cause 2 (quotation marks omitted). "A plaintiff's choice of

forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *Dynamic Data Technologies*, 2019 WL 2433549, at *7 (quotation marks omitted). But the importance of plaintiff's choice "measurably diminishes" where the operative facts "have few meaningful connections" to plaintiff's chosen forum. *Simpson v. Rodas*, No. 10 Civ. 6670 (CS), 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012). At bottom, plaintiffs' response to the order to show cause relies entirely on the deference their choice of forum would ordinarily be due. *See* Pls.' OSC Response 5-9. But for all the reasons discussed above, that deference is "measurably diminishe[d]" here, *Simpson*, 2012 WL 4354832, at *10, and is insufficient to overcome the clear and convincing evidence defendants have presented showing that transfer is warranted.

## **CONCLUSION**

For the foregoing reasons, the Court should transfer this matter to the U.S. District Court for the Western District of New York.

Dated:  New York, New York
      April 28, 2025

                              Respectfully submitted,

                              JAY CLAYTON
                              United States Attorney for the
                              Southern District of New York

                By:  */s/ Christopher K. Connolly*
                              CHRISTOPHER K. CONNOLLY
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Telephone: (212) 637-2761
                              E-mail: christopher.connolly@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 5,105 words.