UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRISONERS' LEGAL SERVICES
OF NEW YORK, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.

Defendants.

No. 25 Civ. 01965 (GHW) (VF)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Tyler Jankauskas
Jordan Joachim
Casandra Delgado
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
tjankauskas@cov.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

A. Factual Background .......... 2

B. Procedural Background .......... 5

LEGAL STANDARD .......... 6

ARGUMENT .......... 6

II. The Organizations' Choice of Forum Is Entitled to Significant Deference. .......... 7

A. The NYCLU and RFK Human Rights Are at Home in This District. .......... 8

B. The First Amendment Rights of the NYCLU and RFK Human Rights Were Chilled in This District. .......... 10

III. The Remaining Factors Under § 1404 Weigh Against or Otherwise Do Not Clearly Justify Transfer. .......... 12

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*,
No. 1:21-CV-04343-GHW, 2021 WL 3115125 (S.D.N.Y. July 20, 2021) ....15

*Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*,
474 F.Supp.2d. 474 (S.D.N.Y. 2007) ....17

*Bryant v. Potbelly Sandwich Works, LLC*,
No. 17-CV-7638, 2018 WL 898230 (S.D.N.Y. Feb. 5, 2018) ....6

*Daniel v. Am. Bd. of Emergency Med.*,
428 F.3d 408 (2d Cir. 2005) ....11

*Dickerson v. Novartis Corp.*,
315 F.R.D. 18 (S.D.N.Y. 2016) ....6, 10

*ESPN, Inc. v. Quiksilver, Inc.*,
581 F.Supp.2d 542 (S.D.N.Y. 2008) ....9

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
928 F. Supp. 2d 735 (S.D.N.Y. 2013) ....18

*Excelsior Designs, Inc. v. Sheres*,
291 F. Supp. 2d 181 (E.D.N.Y. 2003) ....18

*Fox v. Paterson*,
No. 10-CV-6240, 2010 WL 11545717 (W.D.N.Y. May 13, 2010) ....11

*Freeplay Music, LLC v. Thermaltake USA, Inc.*,
No. 19-CV-1674, 2019 WL 12375285 (S.D.N.Y. July 9, 2019) ....16

*Fund for La.'s Future v. La. Bd. of Ethics*,
No. 14-CV-0368, 2014 WL 1514234, at *12 (E.D. La. Apr. 16, 2014) ....11

*Future v. La. Bd. of Ethics*,
No. 14-CV-0368, 2014 WL 1514234 (E.D. La. Apr. 16, 2014) ....11

*Gordon v. State Farm Fire & Cas. Co.*,
No. 1:24-CV-8392-GHW, 2025 WL 1079096 (S.D.N.Y. Apr. 10, 2025) ....14, 17

*Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*,
No. 14-CV-9839, 2015 WL 5751252 (S.D.N.Y Sept. 30, 2015) ....9

*Invivo Rsch., Inc. v. Magnetic Resonance Equip. Corp.*,
119 F. Supp. 2d 433 (S.D.N.Y. 2000)....................2, 13

*It's a 10, Inc. v. PH Beauty Labs, Inc.*,
718 F. Supp. 2d 332 (S.D.N.Y. 2010)....................17

*Kalman v. Cortes*,
646 F.Supp.2d 738 (E.D. Pa. 2009)....................10, 11

*Kamdem-Ouaffo v. Pepsico, Inc.*,
314 F.R.D. 130 (S.D.N.Y. 2016)....................19

*Keitt v. N.Y. City*,
882 F.Supp.2d 412 (S.D.N.Y. 2011)....................12, 14

*Kumar v. Opera Sols. OPCO, LLC*,
No. 20-CV-6824, 2021 WL 4442832 (S.D.N.Y. Sept. 28, 2021)....................11

*McGraw-Hill Companies Inc. v. Jones*,
No. 12-CV-7085, 2014 WL 988607....................6, 10

*Michelli v. City of Hope*,
No. 93-CV-7582, 1994 WL 410964 (S.D.N.Y. Aug. 4, 1994)....................13, 17

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*,
No. 16-CV-1361, 2017 WL 1498058 (S.D.N.Y. Apr. 26, 2017)....................13

*Reeder v. Yamaha Motor Corp., U.S.A.*,
No. 92 CIV. 5455, 1992 WL 370414 (S.D.N.Y. Dec. 2, 1992)....................7, 9

*Seagoing Unif. Corp. v. Texaco, Inc.*,
705 F.Supp. 918 (S.D.N.Y. 1989)....................7

*Sidney Coal Co. v. Soc. Sec. Admin.*,
427 F.3d 336 (6th Cir. 2005)....................8

*Simpson v. Rodas*,
No. 10 Civ. 6670, 2012 WL 4354832 (S.D.N.Y. Sept. 21, 2012)....................9

*Tanyike v. United States*,
603 F.Supp.3d 572 (S.D. Oh. 2022)....................16

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*,
324 F.Supp.3d 366 (W.D.N.Y. 2018)....................12

*Winter v. Am. Inst. of Med. Scis. & Educ.*,
242 F.Supp.3d 206 (S.D.N.Y. 2017)....................8

**Statutes**

28 U.S.C. § 1391 .......................................................................................................7, 8

28 U.S.C. § 1404 .......................................................................................................1, 8, 18

**Other Authorities**

*ICE Performance-Based National Detention Standards 2011* (rev. 2016) ....................................5

## PRELIMINARY STATEMENT

Plaintiffs the New York Civil Liberties Union (the "NYCLU"), Robert F. Kennedy Human Rights ("RFK Human Rights"), and Prisoners' Legal Services of New York ("PSLNY," and together, the "Organizations") respectfully submit this memorandum of law in opposition to Defendants' motion to transfer this matter to the U.S. District Court for the Western District of New York under 28 U.S.C. § 1404(a).

Transfer is not warranted. To succeed on their motion, Defendants must meet a heavy burden to prove by clear and convincing evidence that the Organizations' chosen forum should be set aside. The Court previously declined to transfer this action in response to the Organizations' Response to Order to Show Cause filed April 4, 2025, and Defendants fail to demonstrate that there should be a different result now.[1] In sum, Defendants fail to carry their burden for three main reasons.

*First*, the Organizations' choice of this District is entitled to significant deference because it is where two of the three Organizations are at home. Defendants ignore this well-established basis for significant deference to the Organizations' choice of forum, and their arguments concerning other transfer factors under § 1404 fail to displace the Organizations' right to bring this action where two of them are at home. *Cf.* ECF No. 21 at 10-12 ("Section A (The NYCLU and RFK Human Rights Are at Home in This District.)").

*Second*, the Organizations' choice of this District is independently entitled to significant deference because the claims brought by two of the three organizations arise in this District, the

---

[1] In light of Defendants' reliance on the Organizations' April 4, 2025 Response to Order to Show Cause and related declarations (ECF Nos. 21-24), the Organizations have not repeated all arguments and facts stated in that response. The Organizations' incorporate the arguments and facts set forth in ECF Nos. 21-24 as if set forth herein.

situs of Defendants' unconstitutional chilling of their First Amendment rights. *Cf.* ECF No. 21 at 12-13 ("Section B (The First Amendment Rights of the NYCLU and RFK Human Rights Were Chilled in This District)"). As the Organizations have explained, the site of the First Amendment chilling claim occurs where the chilling takes place. *Id.*

*Third*, the other factors considered by courts under § 1404 weigh against transfer or are at least neutral, and thus cannot support Defendants' heavy burden to establish that transfer is required by a clear and convincing showing. A motion to transfer, even absent the significant deference owed to the Organizations' choice, cannot rely on a toss-up. Defendants largely disregard the material burden a transfer would impose on the Organizations, but there are two sides in this dispute and "a transfer of venue should not merely shift the burden of inconvenience from one party to the other." *Invivo Rsch., Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000).

Accordingly, Defendants' motion to transfer should be denied, and the Organizations accordingly and respectfully request that this case remain as-filed in the Southern District of New York.

## BACKGROUND

### A. Factual Background

The Organizations are each nonprofit providers of *pro bono* legal services, including legal representation of individuals detained at BFDF. ECF No. 1 at 3, ¶ 8. Plaintiff the NYCLU is incorporated in New York State and maintains its main office in New York City. ECF No. 24 at 1, ¶ 3 (Declaration of Amy Belsher). Plaintiff RFK Human Rights is incorporated in Washington, D.C. and has two principal and co-equal offices, one in Manhattan and one in Washington, D.C. ECF No. 22 at 2, ¶¶ 3-4 (Declaration of Sarah Gillman). Plaintiff PSLNY is incorporated in New York State and maintains offices in Albany, Buffalo, Ithaca, and Newburgh.

ECF No. 23 at 2, ¶ 3 (Declaration of Jillian Nowak). Defendants are federal agencies and officers located in the District of Columbia (U.S. Department of Homeland Security, or "DHS"; U.S. Immigration and Customs Enforcement, or "ICE"; and Secretary of the DHS Kristi Noem) and the Western District of New York (Deputy Field Office Director of BFDF Joseph E. Freden; ICE Enforcement and Removal Operations Buffalo Field Office Director Thomas Brophy. ECF No. 1 at 5, ¶¶ 11-15.

In November 2023, ICE headquarters in Washington, D.C. authorized Defendants' legal mail policy by which ICE officers inspect, copy, and retain all legal mail sent to or from BFDF, including protected confidential communications between the Organizations and their clients. ECF No. 22-1 at 2 (Exhibit 1 to the Declaration of Sarah Gillman) ("[T]he BFDF has received a temporary waiver of section 5.1 of the PBNDS from ICE HQ to allow the photocopying of all mail and correspondence received at the BFDF."); ECF No. 1 at 8-10, ¶¶ 13-21. Under Defendants' policy, ICE officers retain custody and control of the original legal mail and provide detained individuals with a copy. *Id.* at 9-10 ¶¶ 16-19, 21. In or around March 2024, Defendants temporarily lifted this policy, but in November 2024, the policy was re-instituted and expanded in scope to provide for the inspection, copying, and retention of all legal documents transmitted to detained individuals, including documents given in-person by attorneys. *Id.* at 11-12, ¶¶ 26-31.

Through their unlawful policy, Defendants have disrupted the attorney-client relationship between each of the three Organizations and their clients, as neither the Organizations nor their clients trust that the confidentiality of their written communications will be maintained under the policy. "In the past, [RFK Human Rights] would send legal mail to BFDF from the RFK Pine Street office on a monthly or bi-weekly schedule. . . . [now they] can no longer communicate

with [their] clients using legal mail." ECF No. 22 at 3-4, ¶ 10; *see also* ECF No. 24 at 2, ¶ 7 ("NYCLU does not trust that the privilege and confidentiality of its written legal communications with clients maintained at BFDF will be maintained"); ECF No. 23 at 2-3, ¶¶ 5-7 ("the PLSNY case handlers providing direct representation to people who are detained at BFDF have discontinued the use of legal mail to communicate with clients for privileged communications").

Defendants have thus chilled and continue to chill the Organizations' privileged and confidential legal communications to their clients. This chilling is happening within this District, where Plaintiffs the NYCLU and RFK Human Rights base representation of their clients detained at BFDF. ECF No. 24 at 2, ¶¶ 4-7; ECF No. 22 at 2-3, ¶¶ 6, 8-9. The Organizations have been forced to rely upon oral communications with their clients detained at BFDF. *See* ECF No. 23 at 2-3, ¶ 7 ("[E]ven during in-person visits, case handlers have opted to read documents to clients rather than hand over written documents to be copied and potentially read by ICE officers.").

The Organizations' reliance on in-person legal visits, caused by Defendants' unconstitutional policy, requires time-consuming and expensive travel that places a burden on the Organizations' already limited means as nonprofit organizations providing *pro bono* legal services. An in-person visit can be an hours-long affair for something as simple as a client signature. *See* ECF No. 23 at 2-3, ¶¶ 7-8. Legal visits from the Manhattan-based NYCLU and RFK Human Rights attorneys, and from PLSNY immigration attorneys in Albany, require additional hours and days of travel. Two-day trips from New York are "a significant time and monetary burden imposed on the NYCLU for its legal representatives to travel to the Buffalo area and to the Western District of New York." ECF No. 24 at 2, ¶¶ 8-9; *see also* ECF No. 22 at

4, ¶ 11 ("[A] *de facto* requirement of travel to Batavia each and every time we need our BFDF clients to review confidential written legal materials creates a heavy burden on our limited time resources."); ECF No. 23 at 2-3, ¶¶ 7-9 ("[T]ravel to [BFDF from Albany] requires a full day of travel for a round-trip visit or an overnight stay."). This unjust burden imposes harm on the NYCLU and RFK Human Rights in this District, which the Organizations have properly chosen as the forum to resolve this matter.

**B. Procedural Background**

On March 10, 2025, Plaintiffs—the New York Civil Liberties Union, Robert F. Kennedy Human Rights, and Prisoners' Legal Services of New York—filed suit in this Court challenging Defendants' unlawful policy. ECF No. 1 at 2, ¶ 1. By chilling the Organizations' right to privileged and confidential communications with the Organizations' clients, Defendants' policy constitutes a violation of the First Amendment. *Id.* at 13, ¶¶ 39-42. And because Defendants' policy arbitrarily and capriciously deviates from their own established standards for the treatment of such mail under ICE's *Performance-Based National Detention Standards 2011* (rev. 2016), Defendants' policy also constitutes a violation of the Administrative Procedure Act. *Id.* at 14, ¶¶ 43-45.

On March 11, 2025, this Court ordered Plaintiffs to show cause as to why this action should not be transferred to the Western District of New York because, on first impression, the Court thought "[t]his entire case . . . arises from alleged conduct" in the Western District. ECF No. 8 at 2-3.

On April 4, 2025, Plaintiffs responded to the Court's order, explaining that their choice of forum is entitled to deference because the NYCLU and RFK Human Rights are at home in this District and the chilling of their rights occurred in this forum, and the remaining factors either "weigh against transfer or are otherwise neutral." ECF No. 21 at 5-6, 13.

On April 6, 2025, Judge Woods issued an order stating "[t]he Court will not take further action on the order to show cause at this time." ECF No. 25. At the time, Defendants had not submitted argument on transfer, and the Court declined to foreclose Defendants' ability to move for a transfer without having had an opportunity to present their position.

On April 28, 2025, Defendants filed a motion to transfer the case to the Western District of New York, asserting that "all of the operative facts alleged" occurred in the Western District, and that the Western District would provide a more convenient forum for Defendants' witnesses and easier access to Defendants' evidence. ECF Nos. 30-31.

## LEGAL STANDARD

A plaintiff's choice of forum should not be disturbed unless "the party requesting a transfer [meets] the heavy burden of proving by clear and convincing evidence that transfer is warranted." *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-CV-7638, 2018 WL 898230, at *2 (S.D.N.Y. Feb. 5, 2018). Importantly, when a plaintiff brings an action where it is at home or where the cause of action arose, that choice of forum is "entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 32 (S.D.N.Y. 2016) (quoting *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085, 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014)).

## ARGUMENT

Defendants seek to transfer this action from this District, where two of the three Organizations are based, to a district where two of the five Defendants are based. But § 1404 requires a clear and convincing showing that transfer is required, not a mere shifting of inconvenience from the moving parties onto the parties seeking legal relief.

Defendants do not dispute that the NYCLU and RFK Human Rights filed this action in their home district, or that PLSNY is entitled to benefit from the same deference owed to its

co-plaintiffs. *Cf.* ECF No. 21 at 9-13 (Section I (The Organizations' Choice of Forum Is Entitled to Deference)). The Organizations' decision to file in this District is thus entitled to significant deference. *See Reeder v. Yamaha Motor Corp., U.S.A.*, No. 92 CIV. 5455, 1992 WL 370414, at *4 (S.D.N.Y. Dec. 2, 1992) (the choice of a home forum is entitled to "significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor of granting the transfer").

The Organizations' choice is also entitled to significant deference because the First Amendment chilling suffered by the NYCLU and RFK Human Rights—and thus the situs of their claims—arose in this District. Defendants disregard that their unconstitutional policy chilled the speech of the NYCLU and RFK Human Rights *in Manhattan*, where they would have sent and received legal correspondence with their clients detained at BFDF.

The balance of other § 1404 factors either weigh against transfer or are neutral, and thus fall short of weighing so "strongly in favor of [transfer]" by clear and convincing evidence so as to disturb the Organization's choice of forum. *Reeder*, 1992 WL 370414, at *4 (citing *Seagoing Unif. Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 936 (S.D.N.Y. 1989)). At its root, Defendants' motion seeks to transfer this action out of the Southern District for the convenience of Defendants and their agents at the cost of the Organizations' own choice of forum and own convenience. This is no basis for transfer.

## II. The Organizations' Choice of Forum Is Entitled to Significant Deference.

The NYCLU and RFK Human Rights have filed suit in this District, where they are at home under § 1404 and where their rights under the First Amendment have been chilled by Defendants' policy. The NYCLU and RFK Human Rights have the right to venue in this District under 28 U.S.C. § 1391(e), on the basis of residency, and under 28 U.S.C. § 1391(b) because they suffered First Amendment chilling in this District. And PLSNY also has the right to file suit

in this District under § 1391(e) as a co-plaintiff against the federal government. *See*, *e.g.*, *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 344-45 (6th Cir. 2005) (requiring only one plaintiff to establish venue under § 1391(e) "is not only the majority view—it is the only view adopted by the federal courts since 1971").

Defendants do not dispute that NYCLU and RFK Human Rights filed in their home district, or that PLSNY is entitled to benefit from the deference owed to its co-plaintiffs. Instead, Defendants state that the Organizations' choice is entitled to "diminished" weight because Defendants allege the locus of facts in this case show "few meaningful connections" to this District. ECF No. 31 at 21. Defendants are wrong. Their unconstitutional policy has chilled free speech in this District, injuring parties whose home and injury in this district is certainly a meaningful connection. In any event, Defendants' statement conflates the two bases for deference to the Organizations' choice. Deference is owed to a plaintiff filing in its home district *or* where the claims arise. *See Dickerson*, 315 F.R.D. at 32.

Because of the deference owed to the Organizations' choice of forum, and because transferring only PLSNY's action would not serve the interests of judicial economy and justice under § 1404, the Organizations' action should remain in this district.

### A. The NYCLU and RFK Human Rights Are at Home in This District.

Because the NYCLU and RFK Human Rights both maintain their principal place of business in Manhattan, where the two organizations suffered a violation of their First Amendment rights, they are at home in this District and their decision to file suit at home is entitled to significant deference under § 1404.

As the Organizations previously explained, the NYCLU is at home in this District because it is headquartered and maintains its principal place of business in Manhattan and is incorporated in New York state. ECF No. 24 at 1, ¶ 3; *cf., e.g.*, *Winter v. Am. Inst. of Med. Scis.*

*& Educ.*, 242 F.Supp.3d 206, 215 (S.D.N.Y. 2017) (explaining that under § 1404(a), a corporate party is "at home" in the district "where it is incorporated, has its nerve center, and does business"). RFK Human Rights is likewise at home in this District under § 1404 because "one of its principal locations and the majority of [its] lawyers relevant to this dispute [are] located here." *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839, 2015 WL 5751252, at *7 (S.D.N.Y Sept. 30, 2015) (quotations omitted); *see also ESPN, Inc. v. Quiksilver, Inc.*, 581 F.Supp.2d 542, 551 (S.D.N.Y. 2008) (giving "considerable weight" under § 1404 to a Southern District forum where plaintiff corporation was incorporated and had a principal place of business in Connecticut, but "many of its operations, including those germane to [the] case . . . [were] carried out in New York City"). Because these two of the Organizations are at home in this District, their choice of forum is "given significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor of granting the transfer." *Reeder*, 1992 WL 370414, at *4; see also *id*. (strong deference to a plaintiff's chosen forum is decreased only when the forum "is neither her home nor the place where the cause of action arose") (collecting cases).

Defendants ignore this argument, and elsewhere suggest that the Organizations' cannot bring suit in this District if the operative facts "have few meaningful connections" to the Organizations' chosen forum. ECF No. 31 at 21 (citing *Simpson v. Rodas*, No. 10 Civ. 6670, 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012)). But by the time the *Simpson* court considered venue, no remaining party was at home in the transferring court. The *Simpson* court found a lack of meaningful connections to the Southern District only *after* dismissing all claims that arose in this District, leaving no parties, claims, or facts with any connection to the transferring court. This simply does not bear on a case where two at-home plaintiffs bring claims in the district where they suffered the harm forming the basis of their claims.

**B. The First Amendment Rights of the NYCLU and RFK Human Rights Were Chilled in This District.**

The Organizations' choice of this District is also independently entitled considerable deference because the chilling effects suffered by the NYCLU and RFK Human Rights occurred here. *Dickerson*, 315 F.R.D. at 32 ("Where 'the forum selected is . . . the place where the operative facts of the action occurred . . . a plaintiff's choice of forum is entitled to considerable weight.'" (quoting *McGraw-Hill Cos. Inc.*, 2014 WL 988607, at *7).

The NYCLU's and RFK Human Rights' claims under the First Amendment arises at the site of the harm in this District. "The suppression [of First Amendment rights] itself . . . is the *most important event* in the origin of [the] suit." *Kalman v. Cortes*, 646 F.Supp.2d 738, 742 (E.D. Pa. 2009) (emphasis added); *id.* (a First Amendment plaintiff "suffers harm only where the speech would have taken place, as opposed to the district in which the statute was written and the decision to restrict this plaintiff's speech was made").

Regarding legal mail sent by the NYCLU and RFK Human Rights, Defendants have no basis to assert that legal mail sent to and from the Manhattan offices of the NYCLU and RFK Human Rights is "speech [that] would have taken place" in the Western District. ECF No. 31 at 13. Neither the NYCLU nor RFK Human Rights have any occasion to send confidential legal mail from within the Western District. *See* ECF No. 22 at 2, ¶ 3 (RFK Human Rights has offices in Manhattan and Washington, D.C.); ECF No. 24 at 2, ¶ 4 (the NYCLU's legal department is located in its Manhattan office). Indeed, the Organizations have been harmed because Defendants' unconstitutional policy forces them to travel in person to BFDF to orally explain what the Organizations' should rightfully be able to send in written correspondence from their offices in Manhattan. ECF No. 22 at 3-4, ¶¶ 8-11; ECF No. 23 at 2-3, ¶¶ 5-7.

Defendants attempt to focus on the place where they inspect, copy, and retain confidential legal mail, ECF No. 31 at 6-9, but ignore caselaw establishing that First Amendment claims arise at the site of chilling. *See Fund for La.'s Future v. La. Bd. of Ethics*, No. 14-CV-0368, 2014 WL 1514234, at *12 (E.D. La. Apr. 16, 2014) (in the context of First Amendment chilling, "the location of the plaintiff is relevant to the . . . inquiry" determining the situs of facts giving rise to venue); *see also Fox v. Paterson*, No. 10-CV-6240, 2010 WL 11545717 (W.D.N.Y. May 13, 2010) ("in determining whether a substantial part of the acts or omissions underlying plaintiffs' claims have occurred in this district, it is important to consider the nature of those claims") (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). To ignore that the chilling caused by Defendants' policy takes place where the Organizations would otherwise exercise their First Amendment rights "would marginalize the [the Organizations'] substantive First Amendment claims under the guise of a venue statute." *Kalman*, 646 F.Supp.2d at 742. The NYCLU's and RFK Human Rights' attorneys and case managers in Manhattan are effectively unable to communicate with their BFDF-detained clients due to Defendants' policy of inspecting, copying, and retaining legal mail sent to and from Manhattan, and their cause of action thus arises in this District. *See* ECF No. 22 at 3-4, ¶ 10; ECF No. 24 at 2, ¶¶ 4, 7.

As to the site of PLSNY's claims, PLSNY has suffered harm in the Northern and Western Districts of New York. ECF No. 23 at 2-3, ¶ 7. Because "the locus of operative facts" as to PLSNY "is split amongst several forums," this factor is neutral as to PLSNY's claims, and thus does not provide a clear and compelling basis to displace the deference owed to the Organizations' choice of forum. *Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-6824, 2021 WL

4442832, at *16 (S.D.N.Y. Sept. 28, 2021) (quoting *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F.Supp.3d 366, 381 (W.D.N.Y. 2018)).[2]

## III. The Remaining Factors Under § 1404 Weigh Against or Otherwise Do Not Clearly Justify Transfer.

Even if the Organizations' choice of this district were not entitled to significant deference, the other § 1404 factors weigh against transfer or are otherwise neutral, and thus fail to provide a clear and convincing justification for disturbing the Organizations' choice of forum.

Courts consider ten factors under § 1404 when deciding whether transfer is appropriate. Because two of these factors—the Organizations' choice to file in their home district and the locus of their claims—entitle the Organizations' choice of forum to significant deference, the remaining eight should be given little weight. But even without this deference, these factors fall short—individually and collectively—of establishing a clear and convincing basis to displace the Organization's choice of forum.

These remaining factors are: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the forum's familiarity with the governing law; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the relative means of the parties; (6) the location of relevant documents and the relative ease of access to sources of proof; (7) trial efficiency; and (8) the interest of justice, based on the totality of the circumstances. *Keitt v. N.Y. City*, 882 F.Supp.2d 412, 459-60 (S.D.N.Y. 2011). None support transfer.

---

[2] To be clear, Defendants are mistaken to suggest that the Organizations somehow ignored consideration of the role of operative facts under 1404. *Compare* ECF No. 21 at 13 n. 1 ("Factor 3 (locus of operative facts) . . . [is] discussed in Section I, above.") *with* ECF No. 31 at 12 (stating "plaintiffs' response to the order to show cause never directly addresses the locus of operative facts component of the transfer analysis").

***This District is Convenient for the Most Significant Concentration of Witnesses.***

"[A] motion to transfer venue should not be granted when the result is merely to shift the inconvenience to the plaintiff," and Defendants have put forward no clear and convincing evidence that a transfer to Western District of New York would result in anything but a marginal shift in convenience to Defendants. *Michelli v. City of Hope*, No. 93-CV-7582, 1994 WL 410964, at *4 (S.D.N.Y. Aug. 4, 1994) (quotation omitted); *see also Invivo Rsch., Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000) (same).

The NYCLU and RFK Human Rights suffered an unconstitutional chilling of their free speech rights in Manhattan, and the most significant concentration of potential witnesses in this case are thus located in this District. *See* ECF No. 24 at 2, ¶ 4; ECF No. 22 at 2, ¶ 6. This District is also a convenient forum for PLSNY, as a significant portion of effected PLSNY employees work in Albany, and travel to a Southern District courthouse will be more convenient than travel to a Western District courthouse. ECF No. 23 at 2-3, ¶¶ 3, 9.

Defendants' assertion that the Organizations' witnesses would not be burdened by travel to the Western District is incorrect. The Organizations have been forced to travel to the BFDF by Defendants' unconstitutional policy, and the Organizations' efforts to serve their clients despite this burden cannot show that such travel is convenient. The Organizations bear "a significant time and monetary burden" for visits to BFDF, causing the Organizations to "los[e] out on hours or days of other productive legal work." ECF No. 24 at 2-3, ¶¶ 9-10; ECF No. 22 at 4, ¶ 11. The materiality, quality, and nature of these witnesses is central to this action, and Defendants' suggestion to compound this burden for the one-sided benefit of unidentified federal employees is not a clear and convincing reason to transfer. *See Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 16-CV-1361, 2017 WL 1498058, at *7 (S.D.N.Y. Apr. 26, 2017) ("The

Court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum; but must rather qualitatively evaluate the materiality of the testimony that the witnesses may provide.") (quotation omitted).

Defendants have further failed to identify a single probable witness whose convenience would be served by transferring the Organizations' action, and thus fail to meet their burden of proof. Defendants' motion primarily relies on the convenience of their own witnesses as a basis for transfer, and they are thus required to "clearly specify the key witnesses to be called and . . . make a general statement of what their testimony will cover." *Gordon v. State Farm Fire & Cas. Co.*, No. 1:24-CV-8392-GHW, 2025 WL 1079096, at *5 (S.D.N.Y. Apr. 10, 2025) (requiring a specific showing when a movant solely relies on the alleged convenience of witnesses for transfer). Defendants have identified no individuals at BFDF who may serve as their witness, and such individuals would in any event be available to testify in this District. *See Keitt*, 882 F. Supp. 2d at 459 (an individual's incarceration bore "little, if any" significance because he "would presumably be transported to any forum requiring his presence for trial").[3] Nor can Defendants attempt to bolster their argument by suggesting that the convenience of government employees and contractors clearly outweighs the convenience of the Organizations' witnesses in this District. *See* ECF No. 31 at 11 ("inconvenience of employees or **agents** of the parties does not weigh as heavily as inconvenience of non-party witnesses") (emphasis added). Defendants therefore fail to establish, by a clear and convincing showing, that the convenience of

[3] Though Defendants adduce no evidence in support of their motion, the Organizations have supported their choice of venue with three declarations. *See* ECF Nos. 21-24. Submission of these declarations with the Organizations' Response to Order to Show Cause was proper, at the least because plaintiffs are "not required to included [in their complaint] allegations showing that venue is proper" and "[t]he court may examine facts outside the complaint and draw reasonable inferences in favor of the plaintiff" in deciding a venue dispute. 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2025).

unidentified and unquantified witnesses justifies imposing a burden on the probable witnesses identified by the Organizations.

***The Convenience of Two Defendants Does Not Clearly Outweigh the Convenience of the Organizations.***

"A mere shifting of inconveniences [between the parties] is not sufficient to transfer a case," and the Organizations' choice of forum reflects their judgment as to the most convenient forum for the Organizations. *1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*, No. 1:21-CV-04343-GHW, 2021 WL 3115125, at *5 (S.D.N.Y. July 20, 2021) (citation omitted). Defendants are thus unable to rely on the residency of two federal defendants in the Western District of New York to shift any inconvenience onto the Organizations, who have suffered a violation of their constitutional rights and brought suit in this District on the basis of appropriate jurisdiction and venue over those defendants. As explained above, Defendants cannot seize on the fact that the Organizations' lawyers must sometimes travel to the Western District to diminish the convenience served by their chosen forum. The Organizations' continued representation of their clients in the face of Defendants' unconstitutional policy does not meet any reasonable meaning of "convenience."

As Defendants correctly acknowledge, courts "presume that government employees are available in any venue." ECF No. 31 at 17. Defendants are all federal officers and agencies, three out of five of whom are based in Washington D.C.—the Department of Homeland Security, Immigration and Customs Enforcement, and Secretary Kristi Noem—and will face no significant inconvenience from appearing in this District as compared to the Western District. And though Defendants repeat arguments as to the convenience of their potential witnesses, they add nothing to this argument when discussing the convenience of the parties. The federal Defendants are

represented by government lawyers, and they offer no basis to suppose there is a compelling inconvenience in this District that would not be simply shifted to the Organizations by a transfer.

***The Governing Law and The Availability of Process to Compel the Attendance of Any Unwilling Witnesses Does Not Clearly Suggest a Need to Transfer.***

Defendants concede that this forum's familiarity with the governing law and the availability of process to compel attendance of unwilling witnesses are "at most, neutral with respect to the proper venue for this action." ECF No. 31 at 19. But Defendants do not move on which forum they may prefer. They must make a clear and convincing showing to displace the Organizations' choice of this District. In this posture, neutrality weighs decidedly against Defendants' motion.

***The Federal Government Has Significant Means to Litigate Relative to the Organizations.***

Defendants' suggestion that the federal government of the United States does not have significant means relative to three *pro bono* legal service Organizations is unavailing. "[T]he Government . . . possesses a deep pool of resources and can wield the power of the federal government to its advantage," *Tanyike v. United States*, 603 F.Supp.3d 572, 584 (S.D. Oh. 2022), and certainly does not "lack[] the means to litigate this case" in this District. *Freeplay Music, LLC v. Thermaltake USA, Inc.*, No. 19-CV-1674, 2019 WL 12375285, at *5 (S.D.N.Y. July 9, 2019).

The Organizations have established that the time and money needed for travel to, and accommodation in, the Western District impose a significant burden on their limited resources. *See* ECF No. 22 at 4, ¶¶ 11-13; ECF No. 24 at 2-3, ¶¶ 8-10. Each trip includes about $300 for flights, $200 in taxis and rideshares, $200 in hotels, and additional funds for meals per person. ECF No. 24 at 2, ¶ 9. And the Southern District is "a substantially more affordable and convenient forum than the Western District, in both travel time spent and financial cost." ECF

No. 22 at 4, ¶ 13. Though Defendants assert that the Organizations must provide documentary evidence of any financial burden, the cases cited refer to transfers "where plaintiff and defendant are both corporations." *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010). In any event, this factor concerns *relative* means, not financial hardship in a vacuum.

The marginal benefit sought by Defendants for the federal government would thereby impose a disproportionate burden on the nonprofit Organizations, who have limited money and resources and whose attorneys and other employees are already burdened by monetary and time costs due to Defendants' unconstitutional policy. ECF No. 22 at 4-5, ¶¶ 11-13; ECF No. 24 at 2-3, ¶¶ 8-10. As a result, transfer to the Western District of New York "would, at best, simply shift inconvenience and cost from [the federal government] to [the Organizations] who [are] less able to bear such cost." *Michelli*, 1994 WL 410964, at *4. This cannot be a clear and convincing reason for transfer.

***The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof Does Not Clearly Suggest a Need to Transfer.***

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents," and thus cannot supply a clear and convincing showing of the need for a transfer. *Gordon v. State Farm Fire & Cas. Co.*, No. 1:24-CV-8392-GHW, 2025 WL 1079096, at *5 (S.D.N.Y. Apr. 10, 2025) (quoting *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*, 474 F.Supp.2d. 474, 484 (S.D.N.Y. 2007)). Defendants argue that the need to compile an administrative record weighs "slightly" in favor of transfer, but fail to explain why the scanning and emailing of such records would be in any way more convenient if those records were used in an action outside of this District. ECF No. 31 at 19. Nor do Defendants

acknowledge there are two sides to this action, and the Organizations will likewise have their own documents located at the Manhattan offices of the NYCLU and RFK Human Rights.

In any event, "slightly" is not enough to show a clear and convincing basis for transfer. Defendants fail their heavy burden to show the location of documents should compel transfer out of the Organizations' chosen forum.

***An Action in this District Serves the Interests of Judicial Economy and of Justice.***

"There are no special features in this action that would cause the interest of justice to be better served if it was in" the Western District of New York, "or that would make the trial more or less efficient in that forum. *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 188 (E.D.N.Y. 2003). Defendants do not dispute that, for the sake of justice and efficiency, the deference owed to the NYCLU and RFK Human Rights to bring this action at home in this District should be extended to PLSNY as their co-litigant. *Cf.* ECF No. 21 at 11-12.

As to the interest of justice, Defendants repeat their assertion that this case arises in the Western District, again ignoring that their chilling of the Organizations' rights is taking place in this District, as described above. ECF No. 31 at 19-20. In any event, Defendants' repetition of this assertion is misplaced. *Each* factor under § 1404 considers "the convenience of parties and witnesses[ and] the interest of justice." 28 U.S.C. § 1404(a). Defendants cannot rely on a case discussing the locus of facts in an attempt to argue that the separate justice factor supports their burden to justify transfer. ECF No. 31 at 19 (citing *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013)).

Defendants also assert that transfer would serve judicial efficiency, but fail to explain how. *First*, that this action is in its early stages does not support Defendants' motion, which requires an affirmative and clear and convincing showing of the need to transfer. *Cf.* ECF No. 31

at 19-20. *Second*, Defendants assert that a "related" habeas action concerning their unconstitutional policy is pending in the Western District, but do not suggest that their policy play a major role in that habeas action, that these cases could be consolidated, or otherwise explain how transfer would serve efficiency in adjudicating the Organizations' claims against Defendants. *Id*. at 20. The "two actions are at different stages of the litigation," and thus irrelevant to transfer. *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 137 (S.D.N.Y. 2016) (collecting cases). *Third*, Defendants allege that judges of the Western District frequently adjudicate lawsuits relating to the BFDF. *Id*. Defendants again do not explain how this bears on the efficient adjudication of the Organizations' claims. *Id*. The Southern District is certainly capable of adjudicating claims against defendants who sometimes appear in other courts. As with Defendants' other arguments, these fall short of a clear and convincing showing.

## CONCLUSION

The Organizations respectfully request that their choice of forum remain intact, and that the Court deny Defendants' motion to transfer.

DATED: May 9, 2025

Respectfully Submitted,

*/s/ Tyler Jankauskas*
Tyler Jankauskas

Sarah T. Gillman
Sarah E. Decker
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine St., Ste. 801
New York, NY 10005
(646) 289-5593
gillman@rfkhumanrights.org
decker@rfkhumanrights.org

Tyler Jankauskas
Jordan Joachim
Casandra Delgado
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
tjankauskas@cov.com
jjoachim@cov.com
cdelgado@cov.com

Kerry Battenfeld
Jillian Nowak
PRISONERS' LEGAL SERVICES OF NEW YORK
41 State St., Ste. M112
Albany, NY 12207
kbattenfeld@plsny.org
jnowak@plsny.org

Amy Belsher
NEW YORK CIVIL LIBERTIES UNION
125 Broad St., Fl. 19
New York, NY 10004
(212) 607-3300
abelsher@nyclu.org

## Certificate of Compliance

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 5,853 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
May 9, 2025

*/s/ Tyler Jankauskas*

Tyler Jankauskas
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
tjankauskas@cov.com