UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRISONERS' LEGAL SERVICES
OF NEW YORK, et al.,

                    Plaintiffs,

          v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.

                    Defendants.

Case No. 25 Civ. 1965 (GHW)
(VF)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR PRELIMINARY INJUNCTION

COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine St., Ste. 801
New York, NY 10005
(646) 289-5593

PRISONERS' LEGAL SERVICES OF NEW YORK
41 State St., Ste. M112
Albany, NY 12207
(518) 445-6050

NEW YORK CIVIL LIBERTIES UNION
125 Broad St., Fl. 19
New York, NY 10004
(212) 607-3300

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 3

   A.   The ICE Standards Prohibit ICE Officers from Opening or Inspecting Detained Individuals' Legal Mail Outside Their Presence, and from Copying and Retaining Originals of Such Mail.................................................................................................... 3

   B.   Under Defendants' New Confiscation Policy, ICE Officers Inspect the Legal Mail of Individuals Detained at BFDF, Create Copies, and Retain the Original Indefinitely............. 5

   C.   Defendants' New Confiscation Policy Obstructs the Organizations' Representation of Their Clients at BFDF.................................................................................................... 8

III. LEGAL STANDARD................................................................................................ 9

IV.  THE ORGANIZATIONS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS UNDER THE FIRST AMENDMENT AND THE ADMINISTRATIVE PROCEDURE ACT............................................................................................... 10

   A.   Defendants' New Confiscation Policy Chills Communications Between the Organizations and Their Clients, Thereby Violating the Organizations' Rights Under the First Amendment................................................................................................................ 10

   B.   Defendants' New Confiscation Mail Policy is Arbitrary, Capricious, and Not in Accordance With Law. ............................................................................................... 20

V.   THE ORGANIZATIONS WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION. ......................................................... 21

VI.  PROTECTING THE ORGANIZATIONS' FIRST AMENDMENT RIGHTS OUTWEIGHS ANY POTENTIAL HARDSHIP TO DEFENDANTS, AND ENTRY OF PRELIMINARY RELIEF IS IN THE PUBLIC INTEREST. .................................................. 23

VII. CONCLUSION........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*725 Eatery Corp. v. City of N.Y.*,
    408 F. Supp.3d 424 (S.D.N.Y. 2019)........................................................................23

*United States ex rel. Accardi v. Shaugnessy*,
    347 U.S. 260 (1954)........................................................................20

*Al-Amin v. Smith*,
    511 F.3d 1317 (11th Cir. 2008) ........................................................................10

*Am. C.L. Union v. Clapper*,
    785 F.3d 787 (2d Cir. 2015)........................................................................9

*Black Lives Matter v. Town of Clarkstown*,
    354 F.Supp.3d 313 (S.D.N.Y. 2018)........................................................................14

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*,
    331 F.3d 342 (2d Cir. 2003)........................................................................21

*Christmas v. Nabors*,
    76 F.4th 1320 (11th Cir. 2023) ........................................................................11

*Cody v. Weber*,
    256 F.3d 764 (8th Cir. 2001) ........................................................................11

*D.M. by Bao Xiong v. Minn. State High Sch. League*,
    917 F.3d 994 (8th Cir. 2019) ........................................................................22

*Davis v. Goord*,
    320 F.3d 346 (2d Cir. 2003)........................................................................10, 12, 16

*Deide v. Day*,
    676 F. Supp. 3d 196 (S.D.N.Y. 2023)........................................................................23

*Elrod v. Burns*,
    427 U.S. 347 (1976)........................................................................21

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)........................................................................21

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)........................................................................22

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*,
    954 F.3d 118 (2d Cir. 2020)........................................................................20

*Goodwin v. Oswald,*
   462 F.2d 1237 (2d Cir. 1972) .................................................................................13

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y.*
   *State Dep't of Corr. & Cmty. Supervision,* 16 F.4th 67 (2d Cir. 2021) (2022) .....................13

*Grubbs v. O'Neill,*
   744 F. App'x 20 (2d Cir. 2018) ...............................................................10, 11, 13

*Hayes v. Idaho Corr. Ctr.,*
   849 F.3d 1204 (9th Cir. 2017) ...........................................................................10, 17

*Haze v. Harrison,*
   961 F.3d 654 (4th Cir. 2020) ..................................................................................10

*Innovation Law Lab v. Nielsen,*
   342 F.Supp.3d 1067 (D. Or. 2018) .....................................................................20, 21

*Jackson v. Powell,*
   No. 1:18-CV-466, 2018 WL 3722158 (W.D. Mich. Aug. 6, 2018) .........................................18

*Johnson v. Goord,*
   445 F.3d 532 (2d Cir. 2006).............................................................................12, 15

*Jones v. Brown,*
   461 F.3d 353 (3rd Cir. 2006) ..................................................................................10

*Kaufman v. McCaughtry,*
   419 F.3d 678 (7th Cir. 2005) ..................................................................................13

*Ligon v. City of N.Y.,*
   925 F.Supp.2d 478 (S.D.N.Y. 2013)..........................................................................23

*U.S. ex rel. Milwaukee Soc. Democratic Pub. Co. v. Burleson,*
   255 U.S. 407 (1921) (Holmes, J., dissenting) ..................................................................12

*Mitchell v. Cuomo,*
   748 F.2d 804 (2d Cir. 1984)..................................................................................23

*Montilla v. I.N.S.,*
   926 F.2d 162 (2d Cir. 1991)..................................................................................20

*Morton v. Ruiz,*
   415 U.S. 199 (1974)..........................................................................................20

*Nat'l Org. for Marriage, Inc. v. Walsh,*
   714 F.3d 682 (2d Cir. 2013)..................................................................................12

*New York Progress & Prot. PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013)..................................................................21, 23

*New York v. U.S. Department of Homeland Sec.*,
  969 F.3d 42 (2d. Cir. 2020)..........................................................10, 21, 23

*Pennsylvania Institutional Law Project v. Wetzel*,
  No. 18-cv-02100 (M.D. Pa. Mar. 25, 2019), ECF No. 93, 4-6 ....................12, 18

*Procunier v. Martinez*,
  416 U.S. 396 408-09 (1974), *overruled on other grounds by Thornburgh v.
  Abbot*, 490 U.S. 401 (1989) ..........................................................12, 13

*Salazar v. King*,
  822 F.3d 61 (2d. Cir. 2015)..........................................................................20

*Sallier v. Brooks*,
  343 F.3d 868 (6th Cir. 2003) .......................................................................10

*Smith v. Robbins*,
  454 F.2d 696 (1st Cir. 1972)........................................................................10

*Thompson v. Ferguson*,
  No. CV 19-4580, 2020 WL 7872629 (E.D. Pa. Dec. 31, 2020) .....................11

*Turner v. Safley*,
  482 U.S. 78 (1987)................................................................................ *passim*

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981).....................................................................................23

*Walker v. Little*,
  No. 20-CV-4460, 2022 WL 580641 (E.D. Pa. Feb. 24, 2022) ......................11

*West v. City of N.Y.*,
  No. 13 CIV. 5155 PAE, 2014 WL 4290813 (S.D.N.Y. Aug. 28, 2014)...............13

*Winter v. Nat'l. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)..................................................................................9, 10

*Wolff v. McDonnell*,
  418 U.S. 539 (1974).............................................................................. *passim*

**Statutes**

5 U.S.C. § 706.............................................................................................21

**Other Authorities**

28 C.F.R. § 540.18 ................................................................................................................19

New York Rules of Professional Conduct 1.6 ......................................................................8

*2011 Operations Manual ICE Performance-Based National Detention Standards*,
    U.S. Immigration and Customs Enforcement ............................................................ *passim*

U.S. Immigration and Customs Enforcement, *Buffalo Federal Detention Facility
    Handbook* (2016) ...........................................................................................................4

## I.    INTRODUCTION

Plaintiffs Prisoners' Legal Services of New York ("PLSNY"), Robert F. Kennedy Human Rights ("RFK Human Rights"), and the New York Civil Liberties Union (the "NYCLU," and together, the "Organizations" or "Plaintiffs") provide *pro bono* legal services to individuals detained at the Buffalo Federal Detention Facility ("BFDF"), an immigration detention facility run by U.S. Immigration and Customs Enforcement ("ICE"). The Organizations' relationships with their detained clients rely on open communications and candor so the Organizations and their clients remain fully informed and free to discuss legal strategy and advice, including advice related to potential legal action against Defendants.

Since November 2024, Defendants have obstructed the Organizations' ability to communicate with their clients detained at BFDF. Under a new policy applied to special correspondence and legal mail, officers working at BFDF (ICE employees or contractors, together, "ICE officers") inspect, copy, and retain all legal mail arriving into and leaving from BFDF (the "New Confiscation Policy"). The Organizations and their clients at BFDF are provided only with copies of their legal mail, and ICE officers retain custody and control of the original legal mail so long as the client is detained. This policy applies even to legal documents provided by attorneys and their agents to clients at in-person visits and at court.

Defendants' New Confiscation Policy unlawfully interferes with the First Amendment rights of Organizations — and their clients — by chilling their right to free and candid communication through written correspondence and documents. The Organizations rely on the confidentiality and attorney-client privilege of written communications and documents to advise individuals detained at BFDF. The Defendants' New Confiscation Policy places the confidentiality of such communication and documents at risk, thereby chilling communications between the Organizations and their clients in violation of the First Amendment.

1

Defendants have no legitimate justification for imposing the New Confiscation Policy, which deviates from the legal mail standards already established under ICE's own *Performance-Based National Detention Standards 2011* (rev. 2016) ("ICE Standards"). The ICE Standards prohibit ICE officers from reading or copying any special correspondence or legal mail, and further prohibit ICE officers from opening, inspecting, or reading any outgoing special correspondence or legal mail. PBNDS § 5.1(V)(F)(2) 360 (ICE 2016). Defendants have suggested that "actionable intelligence" related to alleged contraband justifies their change in policy, but the ICE Standards already account for such circumstances. Ex. 2.[1] In the case of an exceptional security purpose, the ICE Standards allow ICE officers to retain special correspondence or legal mail for no more than 48 hours. The ICE Standards provide no exception whereby a facility may deny the Organizations and detained individuals access to such correspondence indefinitely, as Defendants do at BFDF. PBNDS § 5.1(D)(3) at 359.

The Organizations seek this Court's intervention to restore their *status quo* ability to engage in confidential written communications with their clients under the ICE Standards—an intervention necessary to stop irreparable harm to their rights pending final resolution of this case. The Organizations are likely to prevail on the merits of their claims under the First Amendment and Administrative Procedure Act. The restoration of Defendants' long-endorsed and constitutionally-compliant policy serves the public interest, and cannot reasonably be said to impose a hardship on Defendants.

Unless enforcement of Defendants' New Confiscation Policy is enjoined, the Organizations will suffer further irreparable injury. The Court therefore should grant the Organizations' motion for preliminary injunction.

---

[1] All citations to exhibits refer to the exhibits to the Declaration of Tyler Jankauskas.

## II.    FACTUAL BACKGROUND

### A.    The ICE Standards Prohibit ICE Officers from Opening or Inspecting Detained Individuals' Legal Mail Outside Their Presence, and from Copying and Retaining Originals of Such Mail.

Prior to Defendants' implementation of the New Confiscation Policy, Defendants administered their legal mail policy at BFDF in accordance with the ICE Standards, which ICE established to set standards for certain federally-run immigration detention facilities, including BFDF. Decl. of Jillian Nowak ("Nowak Decl.") ¶ 8. These standards are designed to, among other things, "increase access to legal services." Ex. 3. Chapter 5 of the ICE Standards sets out standards for incoming and outgoing special correspondence and legal mail "to ensure that it is treated as privileged mail." PBNDS § 5.1(V)(C)(4) at 359. Special correspondence or legal mail is defined broadly to include any mail to or from:

      a.  private attorneys and other legal representatives;
      b.  government attorneys;
      c.  judges and courts;
      d.  embassies and consulates;
      e.  the president and vice president of the United States;
      f.  members of Congress;
      g.  the Department of Justice (including the DOJ Office of the Inspector General);
      h.  the Department of Homeland Security (including U.S. Immigration and Customs Enforcement, ICE Health Services Corps, the Office of Enforcement and Removal Operations, the DHS Office for Civil Rights and Civil Liberties, and the DHS Office of the Inspector General);
      i.  outside health care professionals;
      j.  administrators of grievance systems; and
      k.  representatives of the news media.

PBNDS § 5.1(V)(F)(2) at 360. Any mail to or from one of these persons or entities must be treated as special correspondence or legal mail as long as the "title and office of the sender (for incoming correspondence) or addressee (for outgoing correspondence) are unambiguously identified on the envelope, and the envelope is labeled 'special correspondence' or 'legal mail.'"
*Id*.

Generally, all incoming correspondence must be delivered to a detained person within 24 hours of receipt by the facility, and outgoing correspondence must be delivered to the postal service no more than one day after receipt by the facility.  PBNDS §§ 5.1(V)(D)(1)-(2) at 359.  If "exception[al] . . . security purposes" require the status of an addressee or sender to be verified, the ICE Standards limit the period of retaining such correspondence to 48 hours.  PBNDS § 5.1(V)(D)(3) at 359.  The ICE Standards provide no other exception to the rule that all incoming and outgoing mail be delivered to the addressee or postal service within 24 hours, and no provision allows a facility to hold mail for more than 48 hours.

In the event that a facility seeks to inspect correspondence for contraband, the ICE Standards require ICE facilities to "implement procedures for inspecting for contraband, in the presence of the detained person, all special correspondence or legal mail."  PBNDS § 5.1(V)(F)(2) at 360.[2]  Detained persons "shall sign a logbook upon receipt of special correspondence and/or legal mail to verify that the special correspondence or legal mail was opened in their presence."  *Id*.

The ICE Standards make clear that, during any such inspection, ICE staff "shall neither read *nor copy* special correspondence or legal mail."  PBNDS § 5.1(V)(F)(2) at 360 (emphasis added).  The ICE Standards further state that "outgoing special correspondence or legal mail shall *not be opened, inspected or read*."  *Id*., § 5.1(V)(C)(5) at 359 (emphasis added).

---

[2] The BFDF has implemented the ICE Standards through the U.S. Immigration and Customs Enforcement, *Buffalo Federal Detention Facility Handbook* (2016) ("BFDF Handbook").  Ex. 4.  The special correspondence and legal mail policy contained in the BFDF Handbook is consistent with the provisions of the ICE Standards.

The ICE Standards require similar access to written materials provided by an attorney or other legal agent during in-person visits, stating that ICE facilities "must provide for the exchange of documents between a detainee and the legal representative."  PBNDS § 5.7(V)(J)(10) at 400.  The ICE Standards are clear that such materials "shall be inspected but not read" and "[d]etainees are entitled to retain legal material received for their personal use." *Id.*

> **B.  Under Defendants' New Confiscation Policy, ICE Officers Inspect the Legal Mail of Individuals Detained at BFDF, Create Copies, and Retain the Original Indefinitely.**

On November 13, 2023, the Defendants suspended several core protections of the ICE Standards and implemented a new policy for the inspecting, copying, and retaining of legal mail at BFDF.  Ex. 5.  The New Confiscation Policy provides:

> All "Special Correspondence," including "Legal Mail," will be opened in front of the non-citizen in the Processing Unit.  Copies will be made in front of the non-citizen by the designated officer and given to them.  The original documents will be sealed in the original envelope and placed into the non-citizen's property bin.

Ex. 5.  This policy places no time limit on BFDF's retention of special correspondence and legal mail.

ICE has claimed the change was "authorized . . . due to actionable intelligence and prior health-related activities involving detainees and staff members due to contraband being introduced into the facility through general correspondence, items marked as legal mail, and items marked as special correspondence."  Ex. 2.  ICE further claimed the New Confiscation Policy was enacted "for the health and well-being, and safety and security, of the facility, the detainees, and employees."  *Id*.

On its face, the New Confiscation Policy applies to "[a]ll 'Special Correspondence,' including 'Legal Mail.'"  Ex. 5.  For outgoing legal mail, an ICE officer visits each BFDF unit,

collects the legal mail, and takes it away.  Decl. of Osvaldo Hodge Valdez (Hodge Decl.) ¶ 7.
Despite the terms of the New Confiscation policy, the Organizations' BFDF-detained clients are
not present for any inspection and copying, and are unable to observe how the New Confiscation
Policy has been applied to outgoing legal mail.  *Id.*; *cf.* Ex. 5 (legal mail will be "opened in front
of the non-citizen in the Processing Unit.  Copies will be made in front of the non-citizen").

For incoming legal mail, under the New Confiscation Policy ICE officers call an entire
unit of detained individuals to the BFDF mail processing area, then call up to fifteen individuals
into a smaller mail processing room.  Hodge Decl. ¶ 8.  An ICE officer then reviews the special
correspondence and legal mail of each detained person while the others wait in the same
processing room.  *Id.*  ICE officers open the package in front of the individual, extract and
inspect the contents, and allow the detained person only a quick look at the materials, such that
the detained person cannot verify if what is shown to them comprises the complete contents of
the package.  *Id.* ¶ 9.  The detained person is not permitted to handle or touch their legal mail
packages.  *Id.*  After removing and inspecting the contents of a package, the ICE officer brings
the contents to a copy machine located inside the processing room and makes a copy.  *Id.* ¶ 10.

In over a dozen instances, a BFDF-detained client observed ICE officers reading a
detained individual's legal mail when the ICE officers were making copies.  Hodge Decl. ¶ 14.

After copying, the officer then hands the copy to the detained individual.  Hodge Decl.
¶ 10.  Individuals are then instructed to sign a logbook.  *Id.*  After the detained person signs the
logbook, the ICE officer places the original legal mail back inside the original envelope.  *Id.*
¶ 11.  On one occasion, an ICE officer taped a BFDF-detained client's original legal mail with
scotch tape and instructed the detained person to initial the tape, but this use of scotch tape was
not applied during any of that client's other inspections of legal mail.  *Id.*

Officers have informed detained individuals that their original correspondence is brought to and stored in the detained person's property bin, which is under the sole custody and control of Defendants. Hodge Decl. ¶ 12. The BFDF Handbook states that detained individuals are "not allowed access to [their] personal property after the time of initial admission until [they] leave the facility." Ex. 4. On one occasion, a BFDF-detained client requested to see that his legal mail had been placed in his property bin. Hodge Decl. ¶ 12. The ICE officer took the individual to his property bin to show where his legal mail would be placed, but he was not allowed to see the mail actually be placed in the bin. *Id*. Detained individuals do not know who has access to their property bins, or how the bins may be accessed outside of their presence. *Id*.

In or around March 2024, Defendants temporarily suspended their New Confiscation Policy. During that period, detained individuals were still called for processing of their legal mail, but instead of inspecting, copying, and retaining legal mail, ICE officers passed unopened mail through a scanner and then allowed detained individuals to keep their original, unopened legal mail.

On November 27, 2024, Defendants re-instituted and expanded the New Confiscation Policy. Ex. 6. Under the expanded policy, Defendants continue to inspect, copy, and retain legal mail sent to and from BFDF, as described above, but also apply the policy to legal mail brought in-person and to court by any attorney or their agents. Specifically, the expanded policy states:

> Any documents provided by a legal representative to a noncitizen during a visit or in court must be placed in a sealed envelope and given to the contract officer to be delivered to the Processing Unit, where it will be treated as "Special Correspondence" or "Legal Mail."

*Id*. Attorneys visiting BFDF are already required to pass through security before the visit, Nowak Decl. ¶ 6, and under this expanded policy, attorneys are not permitted to provide any legal documents to their clients unless the documents are first taken by an ICE officer and

brought for copying to another room in a different wing of BFDF.  Hodge Decl. ¶ 18; Nowak

Decl. ¶ 10.  Attorneys and their clients are not present when the ICE officer takes documents for

copying, which can take up to 10 minutes.  Hodge Decl. ¶ 18.  After the officer returns with a

copy, the copy is then provided to the client detained in BFDF, while the original is retained

indefinitely.  *Id.*

### C.  Defendants' New Confiscation Policy Obstructs the Organizations' Representation of Their Clients at BFDF.

Defendants' New Confiscation Policy interferes with the Organizations' functions and

obligations fundamental to their relationships with their clients.  For example, the New

Confiscation Policy interferes with the Organizations' ability to discharge their duties under New

York Rules of Professional Conduct 1.6(c), which requires attorneys to protect confidential

information shared with them by their clients.  Under the New Confiscation Policy, "[attorneys]

cannot ethically provide privileged and confidential documents to [their] clients by mail or

during visits because doing so would invite document review and retention by ICE officers."

Nowak Decl. ¶ 12.  The Organizations' attorneys using written communications under this policy

would thus risk violating their NYRPC 1.6(c) duty as the policy creates "risk that the

communication[s] could be read by or come into the hands of unintended recipients."  Wendel

Decl. ¶ 14.  An attorney who sends or solicits mail from a client detained at BFDF risks that such

mail — and thus their client's confidential information — will be read by unintended recipients

at BFDF.  Nowak Decl. ¶ 12; Decl. of Anthony Enriquez ("Enriquez Decl.") ¶ 6; Wendel Decl.

¶ 14.

Because the Organizations' may not rely on written materials to advise and represent

their clients, Wendel Decl. ¶ 14, the New Confiscation Policy interferes with other attorney

obligations under the NYRPC.  Relying solely upon oral communications hinders the

Organizations' obligation under NYRPC 1.1 to provide competent representation to their clients because competent representation — including competent factual investigation — requires lawyers to "communicate in writing with the[ir] client[s.]"  *Id.* ¶ 16.  Oral communications cannot serve as an adequate substitute for the use of written communication.  *See id.* ¶ 17; *see also* Nowak Decl. ¶¶ 3-4.  The burden imposed by this interference is further compounded by the distance between BFDF and the New York-based attorneys and case handlers of the NYCLU and RFK Human Rights, who must organize costly and time-consuming travel across the state to meet in-person with their BFDF-detained clients.  *See, e.g.,* ECF No. 22 at p. 2-4, ¶¶ 3, 9-11 (Declaration of Sarak Gillman)

Defendants' New Confiscation Policy further interferes with the Organizations' duty to act with diligence under NYRPC 1.4.  Attorneys must "keep . . . client[s] reasonably informed about the status of [the clients' cases]," which in certain situations calls for written documentation of certain events or actions taken on a client's behalf.  *See* Wendel Decl. ¶¶ 18-19.  "A lawyer must determine what information to communicate, how frequently, and how urgently, in order to fulfill other fiduciary duties to the[ir] client[s]" and a lawyer "may reasonably determine that the best way to communicate information to the[ir] client . . . is to send a written communication."  *Id.* ¶ 19.  Defendants' New Confiscation Policy obstructs the Organizations' ability to exercise this judgment, compromising their ability to act with competence under NYRPC 1.1 and diligence under NYRPC 1.3.

## III.    LEGAL STANDARD

To obtain a preliminary injunction, a party must "show [1] that he is likely to succeed on the merits; [2] that he is likely to suffer irreparable harm in the absence of preliminary relief; [3] that the balance of equities tips in his favor; and [4] that an injunction is in the public interest[.]" *Am. C.L. Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (citing *Winter v. Nat'l. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008)).  Where the government is the defendant, the balance of

equities and public interest analyses merge.  *See New York v. U.S.  Department of Homeland

Sec.*, 969 F.3d 42, 86 (2d. Cir. 2020) (citing *Winter,* 555 U.S. at 20).

## IV.    THE ORGANIZATIONS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS UNDER THE FIRST AMENDMENT AND THE ADMINISTRATIVE PROCEDURE ACT.

### A.  Defendants' New Confiscation Policy Chills Communications Between the Organizations and Their Clients, Thereby Violating the Organizations' Rights Under the First Amendment.

Defendants' New Confiscation Policy violates the Organizations' — and their BFDF-

detained clients' — First Amendment right to communicate by creating the unjustified risk that

ICE officers may read or access detained individual's legal mail outside of their presence.  Since

the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Second Circuit

and the majority of sister circuits have held that a detained individual be present when an officer

inspects their legal mail to prevent chilling effects caused by the risk of an officer reading that

mail.  *E.g. Grubbs v. O'Neill*, 744 F. App'x 20, 23 (2d Cir. 2018) (relying on *Wolff*, 418 U.S. at

577); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("a prisoner has a right to be present

when his legal mail is opened" and this First Amendment right is violated when officers

"regularly and unjustifiably interfered with the incoming legal mail").[3]  The Second Circuit has

---

[3] *See Smith v. Robbins*, 454 F.2d 696, 697 (1st Cir. 1972) ("mail addressed to the prisoner and adequately shown to be from a member of the state bar may not be opened, to see if the envelope contains contraband, in the absence of the prisoner."); *Jones v. Brown*, 461 F.3d 353, 358 (3rd Cir. 2006) ("the only way to ensure that mail is not read when opened ... is to require that it be done in the presence of the inmate" and to do otherwise "deprives the expression of confidentiality and chills the inmates' protected expression") (citations omitted); *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020) ("[o]pening an incarcerated person's legal mail outside of his presence can chill protected speech [because] this practice strips those protected communications of their confidentiality, inhibiting the incarcerated person's ability to speak, protest, and complain openly, directly, and without reservation with the court") (citations omitted); *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) (legal mail triggers "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail" and risks "unjustifiably chill[ing] the prisoner's right of access to the courts or impair the right to be represented by counsel."); *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210-11 (9th Cir. 2017) ("the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed, a prisoner

explained that this rule protects against "the possibility that a pre-arraignment detainee could believe [an officer] is monitoring their communications and the consequent chilling effect of that belief." *Grubbs,* 744 F. App'x at 23.  In accordance with *Wolff* and its progeny, courts have held that a policy of copying and retaining a detained person's legal mail chills that person's rights under the First Amendment because officers have the ability to review the legal mail outside the detained person's presence.  *See Christmas v. Nabors*, 76 F.4th 1320, 1327-29 (11th Cir. 2023) (a "policy of copying [an imprisoned person's] legal mail using a machine with a memory chip," violated free speech rights because officers "*could* read [plaintiff's] legal mail outside his presence").[4]

Here, Defendants' policy requires that all legal mail be copied and retained outside the presence of detained person's presence in violation of the First Amendment.  Defendants have suggested their policy is related to the alleged introduction of contraband into BFDF through legal mail, but this excuse fails to justify the deprivation of the Organizations' constitutional rights.  Under *Turner v. Safley*, 482 U.S. 78 (1987), a detention facility's deprivation of First Amendment rights is justified by considering whether (1) the detention policy has a valid and rational connection to the stated government interest; (2) alternative means to exercise the deprived constitutional right are available; (3) accommodation of the constitutional right will

---

who receives legal mail that has been opened and re-sealed may be justifiably concerned about the confidentiality of his communications."); *Al-Amin v. Smith*, 511 F.3d 1317, 1331 (11th Cir. 2008) ("Opening attorney mail only in the inmate's presence ensures that the inmate's correspondence with his attorney is not inhibited or chilled by his fear that this correspondence may be read by prison officials.").

[4] *See also, e.g.*, *Thompson v. Ferguson*, No. CV 19-4580, 2020 WL 7872629, at *6 (E.D. Pa. Dec. 31, 2020) (a prison's "practice of keeping a copy of an inmate's privileged mail presents the same risk to confidentiality as opening the mail outside the inmate's presence: the risk that [prison] officials will read an inmate's legal mail, despite policies prohibiting such behavior."); *Walker v. Little*, No. 20-CV-4460, 2022 WL 580641, at *8 (E.D. Pa. Feb. 24, 2022) (prison officials "photocopied [plaintiff's] legal mail and retained the original outside of his presence" thus "violating his First Amendment rights to freedom of speech."); *see also Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001) (a single instance of prison security copying an imprisoned individuals legal mail without permission constitutes injury of that individual's constitutional rights).

impact guards, other inmates, and facility resources, and; (4) a detention facility has ready

alternatives to its policy. *Johnson v. Goord*, 445 F.3d 532, 535 (2d Cir. 2006) (citing *Turner*,

482 U.S. at 89-90).

ICE has already established procedures for inspection of legal mail under the ICE

Standards, and has offered no reason why these procedures fall short or why outgoing mail poses

any contraband risk. The New Confiscation Policy at BFDF fails to adopt *de minimus*

alternatives, such as assigning Attorney Control Numbers or making limited interventions

targeting only specific individuals or pieces of legal mail based on specific evidence. *See, e.g.*,

Order Approving Settlement Agreement, *Pennsylvania Institutional Law Project v. Wetzel*,

No. 18-cv-02100 (M.D. Pa. Mar. 25, 2019), ECF No. 93, 4-6. Instead, the Organizations and

their BFDF-detained clients are left without an adequate means of privileged and confidential

communication.

### 1. The Organizations and their clients possess a First Amendment right in their privileged and confidential mail communications.

The New Confiscation Policy instituted by Defendants imposes a "real and imminent

fear of . . . chilling" the Organizations' legally protected right to privileged and confidential

communications with their BFDF clients, and thus violates the First Amendment. *Nat'l Org. for*

*Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). Both the Organizations and their

clients detained at BFDF have the "right to the free flow of incoming and outgoing mail []

protected by the First Amendment," including in carceral settings. *Davis*, 320 F.3d at 351

(internal citations omitted); *see also U.S. ex rel. Milwaukee Soc. Democratic Pub. Co. v.*

*Burleson*, 255 U.S. 407, 437 (1921) (Holmes, J., dissenting) ("the use of the mails is almost as

much a part of free speech as the right to use our tongues . . . .").

Whether the communication is to or from the Organizations, their right to such speech is effectuated "only when the letter is read by the addressee." *Procunier v. Martinez*, 416 U.S. 396 408-09 (1974), *overruled on other grounds by Thornburgh v. Abbot*, 490 U.S. 401 (1989). "Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each." *Id.*; *see also Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78-79, 82-86 (2d Cir. 2021) (acknowledging standing of non-incarcerated plaintiffs to challenge prison regulations impacting their own First Amendment rights), *cert. denied sub nom. Green Haven Preparative Meeting v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 142 S. Ct. 2676 (2022).

The Organizations' rights to communicate with their BFDF-detained clients have been chilled because, under the New Confiscation Policy, "pre-arraignment detainee[s] could believe [an officer] is monitoring their communications," the Organizations and their BFDF-detained clients' have been forced to chill their written communications. *Grubbs*, 744 F. App'x at 23 (relying on *Wolff,* 418 U.S. at 577)).[5] This policy violates the heightened constitutional protection owed to the Organizations' correspondence to their detained clients as legal mail. *Goodwin v. Oswald*, 462 F.2d 1237, 1242 (2d Cir. 1972) ("the importance of these rights of access [to attorney communication] suggests the need for guidelines both generous and specific enough to afford protection against the reality or the chilling threat of administrative infringement."); *West v. City of N.Y.*, No. 13 CIV. 5155 PAE, 2014 WL 4290813, at *7 (S.D.N.Y. Aug. 28, 2014) ("legal mail . . . merits heightened protection"); *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (same).

---

[5] *See* footnote 3 and accompanying text, above.

The chilling effects of the New Confiscation Policy have already manifested.  The Organizations' BFDF-detained clients have seen that the New Confiscation Policy gives ICE officers the chance to read their legal mail when making copies, and neither the Organizations nor their clients trust that ICE officers will refrain from accessing and reading the originals of confidential legal mail kept out of the presence of detained individuals.  Hodge Decl. ¶¶ 19-20; Nowak Decl. ¶¶ 12-13; Enriquez Decl. ¶ 6-7.  The Organizations' clients have asked them to no longer send legal mail or bring legal documents to in-person visits, and clients have stopped sending legal mail out of BFDF, including from their offices in Manhattan.  Hodge Decl. ¶ 20; Nowak Decl. ¶ 13; Enriquez Decl. ¶ 3.  This chilling of the Organizations' communications with their clients is a foreseeable consequence of the New Confiscation Policy, as "any reasonable person would think twice before continuing to participate" in such constitutionally-protected correspondence with BFDF clients when confidential legal mail is subject to inspecting, copying, and retaining by ICE officers. *Black Lives Matter v. Town of Clarkstown*, 354 F.Supp.3d 313, 324 (S.D.N.Y. 2018).  As Professor Wendel has explained, the Organizations have a duty to protect against the "risk that the communication[s] could be read by or come into the hands of unintended recipients," Wendel Decl. ¶ 14, and the Organizations have taken reasonable and necessary precautions to protect against that risk under the New Confiscation Policy.  *See* Nowak Decl. ¶¶ 12-15.

Any access to legal mail by ICE officers must remain in the presence of detained individuals, or else such communications are chilled by the risk of officers reading that legal mail.  *Wolff,* 418 U.S. at 577 ("the ability to open the mail in the presence of inmates . . . [does not] chill such communications, since the inmate's presence insures that prison officials will not read the mail.").

## 2. Defendants cannot justify their interference with the Organizations' First Amendment rights because the Confiscation Policy is not reasonable under the *Turner* Test.

Prior to enacting Defendants' New Confiscation Policy, BFDF operated under the ICE Standards, which provided a set of standards for federal immigration detention facilities throughout the country, including BFDF. Defendants' deviation from this policy through the New Confiscation Policy fails to meet the four-factor *Turner* Test required to justify Defendants' restrictions on the Organizations' First Amendment rights. *Johnson*, 445 F.3d at 535 (applying *Turner* to determine the validity of prison regulations allegedly depriving plaintiff of his First Amendment right to send outgoing non-legal mail):

> First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it."
>
> Second, courts assess "whether there are alternative means of exercising the right that remain open to prison inmates."
>
> Third, courts consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."
>
> Fourth, courts consider the challenged regulation in relation to proposed alternatives. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation," whereas "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."

*Johnson*, 445 F.3d at 535 (citing *Turner*, 482 U.S. at 89-90).

First, there is not a valid, rational connection between the New Confiscation Policy and Defendants' assertion of "actionable intelligence and prior health-related activities involving detainees and staff members due to contraband being introduced into the facility." The ICE Standards already provide established standards for inspecting and retaining legal mail for 48 hours, and the New Confiscation Policy's additional requirements of copying and indefinitely

retaining detained individuals' mail outside their presence does not further address ICE's purported concerns. *See* PBNDS § 5.1(V)(F)(2) at 360.

Even assuming that there was some connection between the New Confiscation Policy and the government's interest in preventing contraband, it would not justify the overbroad, blanket policy at issue here. To the extent specific "actionable intelligence" of contraband being introduced exists, there is no basis for a blanket policy that applies to all incoming and outgoing mail and in-person written communications. Further, there is no basis for including *outgoing* mail within the policy, which the Second Circuit has recognized "is subject to greater constitutional protection because of the lesser security concerns presented." *Davis*, 320 F.3d at 352. Nor is there any valid basis for including all written legal communications exchanged in person when attorneys and their agents are required to pass through security before the visit.

Second, Defendants' policy leaves the Organizations and other special status communicants with no viable means to exercise their constitutional rights. Individuals detained at BFDF and their attorneys have a reasonable distrust in ICE officers' ability to access confidential legal mail, and detained individuals have asked that their attorneys avoid placing confidential documents at risk of such access. Hodge Decl. ¶¶ 19-20; Nowak Decl. ¶¶ 12-13; Enriquez Decl. ¶ 7. Other special status communicants, such as the courts, also rely upon written communications to ensure detained litigants receive necessary paperwork and filings from their cases, and Defendants' policy effectively requires the Organizations to replace such communications with oral description of any confidential materials. Nowak Decl. ¶ 15.

As Professor Wendel explains, written communications form a core basis of the attorney-client relationship and have no viable substitutes. *See* Wendel Decl. ¶¶ 16-19. The Organizations may not rely solely on oral communications, as doing so would hinder their ability

to provide detailed and complicated advice in a form that can be remembered and revisited by their clients. *Id.*

In-person visitation with detained clients further offers no reasonable alternative because the New Confiscation Policy applies to documents brought by attorneys to such meetings. Even if the New Confiscation Policy did not apply to such documents, the Organizations could not reasonably rely only on visits to BFDF as a replacement for sending legal mail due to the significant burden of such visits. The Organizations' attorneys are based throughout New York state, including in New York City, and effectively mandating in-person visitations for any confidential communication strains the Organizations' resources and interferes with their representation of BFDF-detained clients. *See* ECF No. 22 at p. 4, ¶ 11 (Declaration of Sarah Gillman); *cf. Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) ("prisoners' use of the mail to communicate with their attorneys about their criminal cases may frequently be a more important free speech right than the use of their tongues."). In sum, Defendants' policy leaves the Organizations with no reasonable alternatives for providing confidential communications to their clients.

Third, restoration of the Organizations' and their clients' First Amendment rights creates no "significant ripple effect on fellow inmates or on prison staff[,]" as it will restore the *status quo* of BFDF's longstanding guidelines under the ICE Standards. *Turner*, 482 U.S. at 90. ICE maintains the ability to secure the safety of other facilities under the ICE Standards, and did so at BFDF prior to imposing its New Confiscation Policy. Nowak Decl. ¶ 8. A return to that *status quo* would not significantly — if at all — hinder ICE, its operations, or its interests in maintaining safety at BFDF.

Fourth, the New Confiscation Policy is "an exaggerated response to prison concerns[]" because there exist "obvious, easy alternatives[]" to addressing the issues defendants outlined. *Turner*, 482 U.S. at 90.  ICE has several measured and common responses available to them, including ICE Standards procedures for checking legal mail for contraband in the presence of detained recipients but stopping short of copying or retaining that mail.  *See* PBNDS § 5.1(V)(C)(5) 359.  This policy "ensure[s] consistency with federal legal and regulatory requirements," *2011 Operations Manual ICE Performance-Based National Detention Standards*, U.S. Immigration and Customs Enforcement (Feb. 26, 2025, 1:00 PM), https://www.ice.gov/detain/detention-management/2011, including the Supreme Court's recognition that a detained individual must be present when a detaining authority accesses their legal mail to prevent the chilling of such communications.  *See Wolff*, 418 U.S. at 577. Defendants' use of a scanner for contraband inspections of unopened legal mail from March to November 2024 is one easy alternative that complied with the ICE Standards,  *See*, *e.g.*, *Jackson v. Powell*, No. 1:18-CV-466, 2018 WL 3722158, at *10-12 (W.D. Mich. Aug. 6, 2018) (discussing the use of x-ray scanners as a constitutionally permissible alternative to "inspect [legal mail] for contraband" without "improperly open[ing] and read[ing] legal mail").

ICE may also more stringently apply the ICE Standards for verification of a communicants' claim to special status.  *See* PBNDS § 5.1(V)(F)(2) at 360 (instructing special status individuals to unambiguously mark packages with their "title and office" and with a "special correspondence" or "legal mail" label).  If Defendants suspect contraband is being sent into the facility through mail disguised as legal mail, they can provide specific instructions for special correspondents to confirm their status, as similarly situated facilities have done in response to other lawsuits challenging unconstitutional legal mail policies.  *See*, *e.g.*, Order

18

Approving Settlement Agreement, *Pennsylvania Institutional Law Project v. Wetzel*, No. 18-cv-02100 (M.D. Pa. Mar. 25, 2019), ECF No. 93, 4-6, 10 (instituting system of Attorney Control Numbers for legal mail).  Defendants can also obtain a scanner to screen for contraband without opening legal mail.

 In addition to ICE's own policies, other confinement systems have developed reasonable methods to inspect for contraband while respecting the rights of confined individuals and their counsel.  For example, the respective policies of the Federal Bureau of Prisons ("BOP") and New York State Department of Corrections and Community Supervision ("NY-DOCCS") address specific incidents by allowing facility wardens to issue targeted suspensions of legal mail policies for specific senders or imprisoned individuals.  The BOP permits wardens to place imprisoned individuals on temporary "restricted special mail status."  *See* 28 C.F.R. § 540.18(c)(2).  Even under such restricted special mail status, an imprisoned individual's mail is only to be checked for contraband, must be handled in the inmate's presence, and may only be read if the intended recipient has requested such a review.  *See* 28 C.F.R. § 540.18(c)(2)(iii).  Within NY-DOCCS, authorizations for the inspection of legal mail are issued as to individual pieces of mail and only upon reasonable belief that the mail violates a State or Federal law, violates a NY-DOCCS regulation or directive, or otherwise threatens the safety, security, or good order of the facility.  *Cf.* Dir. No. 4421 § III(C)(1); *cf. Wolff*, 418 U.S. at 577.  Superintendents must further make their authorizations "in writing" and "set forth facts forming the basis for the action."  *Id*.  Neither of these policies allow for the blanket copying or indefinite retention of a person's legal mail.  The New Confiscation Policy at BFDF fails to adopt the *de minimus* alternatives implemented by ICE at other detention facilities or other detention systems to address potential issues of security and safety.

### B. Defendants' New Confiscation Mail Policy is Arbitrary, Capricious, and Not in Accordance With Law.

Defendants' New Confiscation Policy violates the APA because it deviates from Defendants' own regulations and procedures and is contrary to law.  The ICE Standards make clear that if special correspondence or legal mail must be verified for exceptional security purposes, ICE officers' retention of such correspondence is limited to 48 hours.  Even in such exceptional cases, the standards are explicit that ICE "staff shall neither read nor copy special correspondence or legal mail" and that outgoing legal mail "shall not be opened, inspected or read[.]"  PBNDS § 5.1(V)(F)(2) at 360; PBNDS § 5.1(V)(C)(5) at 359.

Defendants' New Confiscation Policy of inspecting, copying, and retaining legal mail is thus an arbitrary and capricious deviation from the ICE Standards.  Under the "deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 127-130 (2d Cir. 2020) (holding Federal Defenders' suit seeks to protect their interests in having adequate access to their clients under Federal Bureau of Prisons' own regulations on inmate-attorney visits) (citing *United States ex rel. Accardi v. Shaugnessy*, 347 U.S. 260, 268 (1954) as articulating this principle); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991) ("The seeds of the *Accardi* doctrine are found in the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.").  Such violations are "not limited to rules attaining the status of formal regulations," but apply to an agency's internal procedures "[w]here the rights of individuals are affected, [rendering] it . . . incumbent upon agencies to follow their own procedures." *Montilla*, 926 F.2d at 167 (citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)); *see also Salazar v. King*, 822 F.3d 61, 76 (2d. Cir. 2015) (quoting *Montilla*).  By implementing

procedures which fail to abide by the ICE Standards, Defendants' New Confiscation Policy constitutes arbitrary and capricious action.  *See, e.g.*, *Innovation Law Lab v. Nielsen*, 342 F.Supp.3d 1067, 1079 (D. Or. 2018) (granting preliminary injunction because failure to follow ICE Standards' provisions on access to legal services was arbitrary and capricious departure from ICE policy). "It is arbitrary and capricious for agencies to depart from prior policy without explanation or 'simply disregard rules that are still on the books.'"  *Id.* 1079 ((citing *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Defendants' New Confiscation Policy further violates the APA because, as described above, it violates the First Amendment and is thus unlawful.  5 U.S.C. § 706(2)(A) (a reviewing court shall hold agency action unlawful where it "not in accordance with law"); *F.C.C*, 556 U.S. at 516 ("the Administrative Procedure Act separately provides for setting aside agency action that is 'unlawful,' 5 U.S.C. § 706(2)(A), which of course includes unconstitutional action").

## V.    THE ORGANIZATIONS WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.

The Organizations suffer irreparable harm as a result of the New Confiscation Policy.  To start with, the New Confiscation Policy violates the Organizations' rights under the First Amendment and the Administrative Procedure Act.  This fact alone establishes irreparable harm. *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003) ("Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed."); *New York,* 969 F.3d at 86 ("[B]ecause money damages are prohibited in APA actions, [injuries under the APA] are irreparable.").

In addition, the Organizations are irreparably harmed because the New Confiscation Policy interferes with their ability to effectively represent and communicate with their clients. The Organizations and their clients do not trust that all ICE officials will refrain from reading confidential legal mail held in their custody, and the Organizations and their clients have stopped exchanging such documents by mail or at in-person visits.  Hodge Decl. ¶ 20; Nowak Decl. ¶ 13. This chilling of attorney-client communication is forced by the New Confiscation Policy, as "[attorneys] cannot ethically provide privileged and confidential documents to our clients by mail or during visits because doing so would invite document review and retention by ICE officers" Nowak Decl. ¶ 12.  As Professor Wendel confirms, the Organizations cannot effectively utilize written communications with their BFDF clients without risk of compromising their NYRPC 1.6 duty to secure information provided to them by their clients.  *See* Wendel Decl. ¶ 14.  The Organizations further cannot depend solely on oral communications and legal visits to substitute for their inability to engage in written communications, because doing so strains the Organizations resources, including by imposing "a *de facto* requirement of travel to Batavia each and every time [the Organizations] need [their] BFDF clients to review confidential legal materials," ECF No. 22 at p. 4, ¶ 11(Declaration of Sarah Gillman); Nowak Decl. ¶¶ 14-15, and would compromise their NYRPC 1.1 duty to provide competent representation and NYRPC 1.4 duty of acting with diligence.  *See* Nowak Decl., ¶¶ 16-19.  The New Confiscation Policy thus creates a situation where the Organizations cannot effectively carry out their legal obligations to their clients.

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," and the harm to the Organizations cannot be rectified by permanent injunctive relief at the conclusion of this case.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559

F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted).  The time the Organizations' clients are held in BFDF is limited, and any judgment the Organizations ultimately obtain cannot make up for that loss.  *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1003 (8th Cir. 2019) ("[D]eprivations of temporally isolated opportunities, are exactly what preliminary injunctions are intended to relieve.").  Neither monetary damages nor permanent injunctive relief following final judgment in this action could compensate the Organizations for those losses.

## VI.    PROTECTING THE ORGANIZATIONS' FIRST AMENDMENT RIGHTS OUTWEIGHS ANY POTENTIAL HARDSHIP TO DEFENDANTS, AND ENTRY OF PRELIMINARY RELIEF IS IN THE PUBLIC INTEREST.

As the Second Circuit has explained, "where a plaintiff alleges constitutional violations, the balance of hardships tips decidedly in the plaintiff's favor despite arguments that granting a preliminary injunction would cause financial or administrative burdens on the Government." *Deide v. Day*, 676 F. Supp. 3d 196, 232-33 (S.D.N.Y. 2023) (citations omitted); *see also Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Thus, "securing [the Organizations'] First Amendment rights is in the public interest." *725 Eatery Corp. v. City of N.Y.,* 408 F. Supp.3d 424, 470 (S.D.N.Y. 2019) (quoting *New York Progress and Protection PAC*, 733 F.3d at 488 (2d. Cir. 2013)); *Ligon v. City of N.Y.*, 925 F.Supp.2d 478, 541 (S.D.N.Y. 2013) ("[T]he public interest lies with the enforcement of the Constitution.").  A preliminary injunction against the New Confiscation Policy further serves the public interest because "there is no public interest" in "an unlawful, arbitrary, and capricious [agency action]."  *New York,* 408 F.Supp.3d at 351 (DHS had no public interest in an unlawful, arbitrary, and capricious rule despite "legitimate interest in administering the national immigration system").

"[S]ound legal advice or advocacy serves public ends and . . . depends upon the lawyer's being fully informed by their client[,]" but candid communications between the Organizations and their clients are obstructed by Defendants' New Confiscation Policy. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). ICE has suggested that the "change in policy [was] due to actionable intelligence . . . [relating] to contraband being introduced into the facility," Ex. 2, but the ICE Standards already address those concerns by allowing officers to inspect and retain legal mail suspected of including contraband for up to 48 hours. Moreover, Defendants have other means to control for contraband without violating the Constitution and their own standards, as explained above. Granting a preliminary injunction will support the balance of equities and the public interest by restoring the status quo pending resolution.

## VII. CONCLUSION

For the foregoing reasons, the Organizations respectfully request that this Court preliminarily enjoin Defendants from enforcing their New Confiscation Policy, and any other policy, practice, or custom that allows for the reading, copying, and retention of confidential legal mail provided by mail or in-person to or from the Organizations, other organizations providing legal services, courts, and clients and potential clients detained in BFDF. A proposed form of injunction is submitted herewith for the Court's consideration.

DATED:  May 27, 2025                    Respectfully Submitted,

                                          /s/ Tyler Jankauskas
                                         Tyler Jankauskas

Sarah T. Gillman                        Tyler Jankauskas
Sarah E. Decker                         Jordan Joachim
ROBERT F. KENNEDY HUMAN RIGHTS          Casandra Delgado
88 Pine St., Ste. 801                   COVINGTON & BURLING LLP
New York, NY 10005                      620 Eighth Avenue
(646) 289-5593                          New York, New York 10018-1405
gillman@rfkhumanrights.org              (212) 841-1000
decker@rfkhumanrights.org               jjoachim@cov.com
                                        tjankauskas@cov.com
                                        cdelgado@cov.com

Kerry Battenfeld                        Amy Belsher
Jillian Nowak                           NEW YORK CIVIL LIBERTIES UNION
PRISONERS' LEGAL SERVICES OF NEW YORK   125 Broad St., Fl. 19
41 State St., Ste. M112                 New York, NY 10004
Albany, NY 12207                        (212) 607-3300
(518) 445-6050                          abelsher@nyclu.org
kbattenfeld@plsny.org
jnowak@plsny.org

**Certificate of Compliance**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law is 25 pages and contains 8,095 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Practices in Civil Cases of Judge Valerie Figueredo at Section III(b).

Dated:  New York, New York
        May 27, 2025

                              */s/ Tyler Jankauskas*

                              Tyler Jankauskas
                              COVINGTON & BURLING LLP
                              620 Eighth Avenue
                              New York, New York 10018-1405
                              (212) 841-1000
                              tjankauskas@cov.com