UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PRISONERS' LEGAL SERVICES OF NEW YORK, *et al.*

                       Plaintiffs,

v.                                                                    25-CV-1965

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*

                       Defendants.

_____

## <u>DECLARATION OF GEORGE P. HARVEY JR.</u>

Pursuant to 28 U.S.C. § 1746, I, George P. Harvey Jr., hereby declare and state as follows:

1.     I am employed by the Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") as an Assistant Field Office Director ("AFOD") in the Batavia, New York sub-office of ERO Buffalo ("ERO Buffalo").   I have been employed by ICE since 2007.   I have held the position of AFOD since December 2022.

2.     I submit this declaration in opposition to the plaintiffs' motion for a preliminary injunction.   This declaration is based upon my personal knowledge, a review of records maintained by ICE, and information obtained from other ICE personnel.

## <u>BACKGROUND</u>

3.     ICE is a component within DHS.   ICE is the largest investigative branch of DHS and is charged with the enforcement of more than 400 federal statutes.   The agency was created after the September 11, 2001 terrorist attacks by combining components of the former Immigration

and Naturalization Service and the former U.S. Customs Service to more effectively enforce federal immigration and customs laws and to protect the United States against terrorist attacks. The mission of ICE is to protect the United States from the cross-border crime and illegal immigration that threaten national security and public safety. To carry out that mission, ICE focuses on enforcing immigration laws, preventing terrorism, and combating transnational criminal threats. ICE consists of three core operational directorates: (1) ERO, which is the focus of this declaration and which consists of 25 field offices led by Field Office Directors; (2) Homeland Security Investigations (HSI), which consists of 30 field offices led by Special Agents-in-Charge; and (3) the Office of the Principal Legal Advisor, which includes 25 field offices led by a Chief Counsel.

4.      ICE ERO personnel include ICE deportation officers who are immigration officers under 8 U.S.C. § 1357 and possess limited delegated customs-officer authority under 19 U.S.C. § 1589a. It is the mission of ICE ERO to identify, arrest, and remove aliens who present a danger to national security or are a risk to public safety, as well as those who enter and or remain in the United States illegally — including those who cross the border illegally, a federal misdemeanor, and those who illegally reenter the United States after having been removed, a federal felony, as well as those aliens ordered removed from the United States who have failed to depart — or otherwise undermine the integrity of federal immigration laws and border control efforts. ICE ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. ICE ERO prioritizes the apprehension, arrest, and removal of aliens who threaten the safety of our nation's communities and the integrity of U.S. immigration laws.

5.      ERO Buffalo is responsible for targeted interior enforcement of U.S. immigration laws in all 48 counties within the Buffalo Area of Responsibility (AOR).  This includes the identification, apprehension, detention, and removal of aliens from the United States, the service of legal documents on removable aliens, and immigration case management during removal proceedings.  ERO Buffalo also operates the Buffalo Federal Detention Facility ("BFDF").  The BFDF is a Service Processing Center ("SPC"), which is an ICE-owned detention facility, located at 4250 Federal Drive, Batavia, New York 14020.  Aliens charged with violating federal immigration law are detained at the BFDF for immigration proceedings and removal from the United States.

6.      I am one of two AFODs who are currently responsible for the day-to-day operations of the BFDF.  As AFOD, I oversee detention, compliance, and the processing of detained aliens at the BFDF.  Due to my experience and the nature of my official duties, I am familiar with the BFDF's detention policies and procedures, including those relating to detainee mail.

7.      Regardless of whether detention facilities are owned and operated by ICE, a state or local entity, or a contractor, facilities housing ICE detainees must comply with one of the agency's two existing detention standards, which describe the facility's immigration detention responsibilities, explain what detainee services a facility must provide, and identify what a facility must do to ensure a safe and secure detention environment for staff and aliens in detention.  The BFDF is subject to the 2011 ICE Performance-Based National Detention Standards ("PBNDS") with 2016 Revisions, which are available on ICE's public facing website at https://www.ice.gov/detain/detention-management.

## BFDF POLICIES AND PROCEDURES FOR PROCESSING LEGAL MAIL AND

## SPECIAL CORRESPONDENCE

### Implementation of a Temporary Mail Policy at the BFDF in November 2023

8.      In November 2023, the BFDF was experiencing an emergency situation regarding drugs and synthetic substances being sent to the detained population via the U.S. mail service, involving mail marked as legal mail and non-legal mail.  Specifically, ERO Buffalo Officers determined through investigative means that detainees were receiving envelopes and papers in the mail that were soaked or sprayed with drugs and/or synthetic substances and disguised as legal mail and non-legal mail.  Because the papers and envelopes were soaked or sprayed with liquids and disguised as both legal and non-legal mail, it was difficult if not impossible for the BFDF to detect this contraband while receiving and distributing the mail to detainees.  Detainees were then smoking or ingesting the soaked and sprayed paper within the BFDF, resulting in multiple health-related incidents such as suspected overdoses and detainees displaying an altered state.  Some detainees were transported to the hospital as a result of possible drug or substance use.  At least one detainee was administered Narcan due to a suspected overdose.  BFDF staff, including medical staff, complained about detainees smoking or otherwise using drugs or synthetic substances within the facility and how it affected the facility's air quality, made them feel sick, and created an unsafe work environment.

9.      As a result, in November 2023, the former ERO Buffalo Field Office Director approved the BFDF to take necessary and emergent steps to protect BFDF staff and detainees from drugs and synthetic substances entering the BFDF. To accomplish the Field Office Director's directive, the former ERO Buffalo Deputy Field Office Director directed me to develop a plan to

4

address this emergency situation.   As a result, I developed and instituted a policy change to screen all mail, to include mail marked as legal mail or special correspondence, coming into the BFDF. Attached as Exhibit A is a Memorandum I issued to BFDF staff on November 8, 2023 regarding the policy change and public notice of same.   The policy change went into effect on November 13, 2023.

10.     Under the policy, all special correspondence, including legal mail, was required to be opened and photocopied in front of the detainee to whom it was addressed, and the originals were to be sealed in the original envelope and placed into the detainee's property bin.   These steps were developed to prevent dangerous drugs and substances from entering the BFDF, while still allowing the detainees to receive photocopies of their mail.   As discussed in paragraph 8, above, the new policy was implemented due to actionable intelligence and health-related incidents involving detainees and staff members due to contraband being introduced into the BFDF through the mail.   The policy was intended to be temporary until a more effective manner of screening the mail could be implemented that would allow the BFDF to screen the mail and detect dangerous substances without having to photocopy all mail.   The goal of the new policy and procedure was to continue to ensure the safety of every detainee housed at the BFDF, as well as all staff employed at the BFDF, and to provide an environment that is free from dangerous drugs and substances that can harm those in the care of the BFDF and those who work there.

11.     As set forth in paragraph 7, above, the BFDF is subject to the 2011 ICE Performance-Based National Detention Standards ("PBNDS") with 2016 Revisions, which are available on ICE's public facing website at https://www.ice.gov/detain/detention-management.

Regarding inspection of incoming special correspondence or legal mail, PBNDS § 5.1(V)(F)(2) specifically provides the following:

> All facilities shall implement procedures for inspecting for contraband, in the presence of the detainee, all special correspondence or legal mail. Detainees shall sign a logbook upon receipt of special correspondence and/or legal mail to verify that the special correspondence or legal mail was opened in their presence. Staff shall neither read nor copy special correspondence or legal mail. The inspection shall be limited to the purposes of detecting physical contraband and confirming that any enclosures qualify as special correspondence or legal mail.

12.    On November 15, 2023, ICE ERO Headquarters approved a Memorandum granting ERO Buffalo a ninety-day waiver of PBNDS § 5.1 to allow the opening and photocopying of all legal mail and special correspondence received at the BFDF and placing the originals in the detainee's property. *See* Exhibit B. This Memorandum recognized that the BFDF faced an emergent situation with drugs and synthetic substances being sent to detainees at the BFDF via mail marked as legal mail.

13.    Also on November 15, 2023, I issued an updated Memorandum to BFDF staff regarding the policy change. *See* Exhibit C. This Memorandum provides, in relevant part, that all special correspondence, including legal mail, would be delivered to the Processing Unit within the BFDF and opened and copied in front of the corresponding detainee in the Processing Unit. Under the policy change, when the BFDF received legal mail or special correspondence addressed to a detainee, AGS staff[1] called the detainee to the Processing Unit and opened the legal mail or special correspondence in the presence of the detainee, made a copy for the detainee, gave the copy

---

[1] ICE maintains a contract with Akima Global Services, LLC ("AGS") for detention management support services at the BFDF. The services provided by AGS include, among other things, processing detainee mail at the BFDF.

to the detainee, and stored the original in the detainee's property bin. The original documents would be sealed in the original envelope and placed into the detainee's property bin by AGS staff. The distribution of all special correspondence and legal mail would be conducted in the Processing Unit Monday-Friday (excluding holidays), as time allowed, and hours might vary.

14.    Each time a detainee's property bin is opened and new items are added to it, the bin is resealed and a new seal is documented.

15.    The policy change announced by the November 15, 2023 Memorandum did not apply to outgoing legal mail, *i.e.*, mail sent by a detainee to someone outside of the BFDF, and it has not been the general practice of the BFDF to open and copy outgoing legal mail.

16.    The November 2023 BFDF mail policy was intended to be temporary, until a more effective manner of screening the mail could be implemented, which would hopefully enable the BFDF to screen the mail and detect drugs and dangerous substances without having to open and photocopy all incoming mail. The goal of the new procedures was to continue to ensure the safety of every detainee housed at the BFDF, as well as all staff employed at the BFDF, and to provide an environment that is free from dangerous drugs and substances that can harm those in the care of the BFDF and those who work there.

17.    After the foregoing policy change was implemented in November 2023, the BFDF detected a decrease in drug and synthetic substance related incidents within the BFDF.

18.    On January 30, 2024, ICE ERO Headquarters approved a Memorandum granting an additional ninety-day waiver of PBNDS § 5.1 to allow the opening and photocopying of all legal mail and special correspondence received at the BFDF and placing the originals in the detainee's property. *See* Exhibit D.

**Discontinuation of the November 2023 Mail Policy in March 2024**

19.    In February 2024, the BFDF received an electronic scanning device to scan mail for drugs and synthetic substances.   The scanning device operates similar to an x-ray machine but is specially designed to detect threats such as liquids, powders, and laced papers.

20.    Following receipt of the mail scanner in February 2024, relevant AGS staff members received training on its use.   Beginning in March 2024, AGS staff began transitioning to use of the mail scanner in place of the November 2023 BFDF mail policy described above.

21.    On May 13, 2024, ICE ERO Headquarters approved a Memorandum waiving PBNDS § 5.1 for an indefinite period to allow the opening and photocopying of all legal mail and special correspondence received at the BFDF and placing the originals in the detainee's property. *See* Ex. E.   The Memorandum explained, however, that in February 2024 the BFDF obtained "an apparatus designed to scan general correspondence, other mail, legal mail, special correspondence, and other documents received at the BFDF and detect if there are any foreign substances on them. This can be done so, without opening the envelopes that the documents are contained in, provided there are less 25 documents in those envelopes."   The Memorandum also explains that to "ensue [sic] both the safety and security of all noncitizens, staff and visitors of the BFDF, while also not taking away the noncitizen's right to legal materials, some photocopying of documents that detect a foreign substance will be necessary."

22.    On May 24, 2024, I updated BFDF Policy 5.4.1 (Detainee Correspondence) to reflect the implementation of the mail scanning device.   *See* Ex. F.   The updated policy attaches a copy of the May 13, 2024 Memorandum waiving PBNDS § 5.1 for an indefinite period of time to allow the opening and photocopying of all legal mail and special correspondence received at the

BFDF and placing the originals in the detainee's property.   Under BFDF Policy 5.4.1, AGS staff were required to utilize the scanning device to scan legal mail and special correspondence to detect if it contained any foreign substance in order "to ensure the safety of every detainee housed at the BFDF and provide an environment that is free from dangerous drugs and substances that can harm those in [the BFDF's] care." *Id.*   The scanning device could scan legal mail without it being opened if there were fewer than 25 pages within an envelope.   If there were more than 25 pages within an envelope, Policy 5.4.1 required AGS staff to have the detainee present while the envelope was opened and pages were separated into smaller quantities, and these smaller groups of pages were placed into manila envelopes to prevent their contents from being seen during the scanning process.   Under BFDF Policy 5.4.1, all documents that were already in the possession of newly arriving detainees, and documents received by detainees during legal visits, were subject to the same scanning process.   If a foreign substance was detected on legal mail or special correspondence, AGS staff were required to copy the mail in the detainee's presence, provide the detainee with the copy, and place the original in the detainee's property bin, pursuant to the process described in paragraph 13, above.   BFDF Policy 5.4.1 prohibits AGS staff from reading legal mail.

### Implementation of the Current Mail Policy in November 2024

23.    In or around November 2024, the BFDF detected another increase in drug and synthetic substance related incidents within the facility.   BFDF medical staff complained about the air quality within the facility and how it gave them headaches and made them feel dizzy and nauseous.   According to the staff, the odor resembled the smell of chemicals.   As a result of these complaints, ERO Buffalo approved air ventilation within the facility to try to improve the air

quality.   Also around this time, ERO Buffalo Officers determined through investigative means that drugs or synthetic substances had entered the detained population through documents exchanged during court.

24.     To address this emergency situation, on November 27, 2024, I implemented a change of policy and procedures for Detainee Visitation.   Attached as Exhibit G is a Memorandum I issued to AGS dated November 27, 2024 regarding the policy change and public notice of same.   The Memorandum strongly encourages legal representatives to mail documents to detainees at the BFDF rather than handing such documents to detainees during legal visits or court.   The Memorandum states that if a legal representative provides documents to a detainee during a visit or in court, the documents must be placed in a sealed envelope and given to AGS staff to be delivered to the Processing Unit, where the documents will be processed as legal mail or special correspondence.   The Memorandum states that AGS staff are prohibited from reading special correspondence or legal mail.   Also around this time, I directed AGS to return to the procedures that were implemented in November 2023 with respect to legal mail and special correspondence in order to curb drugs or synthetic substances from entering the facility. Specifically, all special correspondence, including legal mail, was to be inspected and opened and photocopied in front of the detainee in the Processing Unit.   If photocopied, the detainee would be given the photocopy, and the original documents would be sealed in the original envelope and placed in the detainee's property bin, pursuant to the process described in paragraph 13, above. Because ERO Headquarters issued an indefinite waiver of PBNDS § 5.1 in May 2024, *see* Exhibit E, ERO Buffalo did not have to request another waiver from ICE ERO Headquarters in order to resume opening and copying legal mail and placing the originals in the detainee's property.   As

has been the case since the BFDF implemented the policy change in November 2023, I made the decision to resume opening and copying legal mail to ensure a safe and secure detention environment for BFDF staff and detainees that is free from drugs and dangerous substances.   This policy change went into effect on or about December 2, 2024.

25.    As of the date of this declaration, the BFDF runs all legal mail and special correspondence through the scanning device and opens and copies all legal mail and special correspondence in front of the detainee and places the original in the detainee's property following the procedures set forth in paragraph 24, above.   The BFDF follows this procedure to ensure the safety of every detainee housed at the BFDF, as well as all staff employed at the BFDF, and to provide an environment that is free from dangerous drugs and substances that can harm those in the care of the BFDF and those who work there.   As an AFOD responsible for the day-to-day operations of the BFDF and the health and wellbeing of its detainees and staff, it is incumbent that I take necessary action to prevent drugs and other dangerous substances from entering the BFDF, as failing to do so could result in adverse health consequences to detainees and staff such as overdose or even death, and security concerns resulting from drug transactions among detainees. That said, I have tailored the detainee legal mail procedures to ensure the confidentiality of genuine legal mail and special correspondence by directing AGS to open and copy legal mail and special correspondence in the presence of the detainee and to not read special correspondence and legal mail.   The originals are stored in the detainee's property bin, which is sealed, rather than discarded or returned to sender, in case the detainee or his attorney legitimately need to access the original, such as for court.

26.     The BFDF policy and procedures currently in effect are not necessarily permanent. ERO Buffalo continually evaluates the safety and security of the BFDF and will modify its policies and procedures as circumstances warrant.

27.     The BFDF policy and procedures currently in effect are not unique.   Other detention and correctional facilities are also struggling to keep drugs and dangerous substances out of their facilities and have responded by photocopying legal mail.   Attached as Exhibit H is a Buffalo News article dated January 28, 2024 reflecting that the Erie County, New York Sheriff's Office has been photocopying legal paperwork in response to lawyers unwittingly giving their clients documents laced with synthetic drugs.   Attached as Exhibit I is an Albany, New York Times Union Article dated March 18, 2025 detailing a criminal case in which the defendant admitting lacing copy paper and business envelopes with synthetic marijuana and sending the documents to state correctional facilities disguised as legal mail in the names of actual attorneys. The article notes that the use of "legal mail" to smuggle drugs into state prisons has been "prevalent."

28.     I am aware that the plaintiffs allege in this case that BFDF staff read legal mail belonging to an unspecified detainee on unspecified dates.   If the plaintiffs were to provide the name of the detainee whose mail was allegedly read, and the dates on which it was allegedly read, I would investigate the incident by, for example, interviewing staff and reviewing any surveillance video that may exist.   If the surveillance video of the alleged incident remains accessible, I would be able to review it to determine if it corroborates the alleged incident.   If I determined that AGS staff improperly read a detainee's legal mail or special correspondence, appropriate disciplinary action would be taken against the staff member.   However, I am unable to adequately investigate

the plaintiffs' allegations at this time because they have not provided the name of the detainee whose mail was allegedly read or the dates on which the mail was allegedly read.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 10, 2025.

_____
GEORGE P. HARVEY JR.