UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRISONERS' LEGAL SERVICES
OF NEW YORK, et al.,

                    Plaintiffs,

          v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.

                    Defendants.

Case No. 25 Civ. 1965 (GHW)
(VF)

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine St., Ste. 801
New York, NY 10005
(646) 289-5593

PRISONERS' LEGAL SERVICES OF NEW YORK
41 State St., Ste. M112
Albany, NY 12207
(518) 445-6050

NEW YORK CIVIL LIBERTIES UNION
125 Broad St., Fl. 19
New York, NY 10004
(212) 607-3300

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.   THE ORGANIZATIONS DO NOT SEEK A "DISFAVORED" INJUNCTION.............. 2

III.  THE ORGANIZATIONS HAVE SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION. .......... 2

IV.  THE ORGANIZATIONS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT AND APA CLAIMS. ...................................................... 4

    A.   Defendants' New Confiscation Policy Unjustifiably Chills the Organizations' First Amendment Rights to Communicate with Their Clients.................................... 4

    B.   Defendants' New Confiscation Policy is Arbitrary, Capricious, and Not in Accordance with the Law........................................................................................... 7

V.   PROTECTING THE ORGANIZATIONS' FIRST AMENDMENT RIGHTS OUTWEIGHS ANY POTENTIAL HARDSHIP TO DEFENDANTS............................. 9

VI.  DEFENDANTS HAVE SHOWN NO REASON TO DELAY THE ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF. ...................................................................... 10

VII. CONCLUSION................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Black Lives Matter v. Town of Clarkstown*,
  354 F.Supp.3d 313 (S.D.N.Y. 2018)........................................................7

*Bradshaw v. City of New York*,
  No. 15-CV-9031, 2017 WL 325260 (S.D.N.Y. Jan. 23, 2017) ................................6

*Bray v. Mazza*,
  No. 4:21-CV-00119, 2022 WL 17836601 (W.D. Ky. Dec. 21, 2022) ........................6

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  364 F. Supp. 3d 253 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019)................2

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)........................................................8

*Costello v. McEnery*,
  767 F. Supp. 72 (S.D.N.Y. 1991)........................................................3

*Damus v. Nielsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ........................................................7

*Grubbs v. O'Neill*,
  744 F. App'x 20 (2d Cir. 2018) ........................................................7

*Innovation Law Lab v. Nielsen*,
  342 F.Supp.3d 1067 (D. Or. 2018) ........................................................8

*Johnson v. Goord*,
  445 F.3d 532 (2d Cir. 2006)........................................................4

*Kakar v. USCIS*,
  29 F.4th 129 (2d Cir. 2022) ........................................................8

*Levine v. Bradshaw*,
  No. 22-CV-80321, 2023 WL 11885182 (S.D. Fla. July 6, 2023)............................6

*Natural Resources Defense Council v. EPA*,
  658 F.3d 200 (2d Cir. 2011)........................................................8

*New York Bay Cap., LLC v. Cobalt Holdings, Inc.*,
  456 F.Supp.3d 564 (S.D.N.Y. 2020) (Woods, J.) ........................................2

*New York Progress & Prot. PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013)..............................................................................................3

*Shady v. Tyson*,
  5 F. Supp. 2d 102 (E.D.N.Y. 1998) ....................................................................................3

*Strebe v. Kanode*,
  No. 7:17-CV-00321, 2018 WL 4473117 (W.D. Va. Sept. 18, 2018)......................................6

*Turner v. Safley*,
  482 U.S. 78 (1987)..................................................................................................4, 5, 9

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)...............................................................................................................9

*Velesaca v. Decker*,
  458 F. Supp. 3d 224 (S.D.N.Y. 2020)..................................................................................8

## I.    INTRODUCTION

The key issues in this case are not in dispute.  Since December 2024, Defendants have implemented their New Confiscation Policy under which ICE officers inspect, copy, and retain originals of all legal mail sent to BFDF or brought by attorneys and case managers to in-person visits.[1]  ICE officers have the opportunity to read confidential legal mail when making copies or by later accessing the originals of confidential legal mail out of the presence of detained individuals.  BFDF also uses a scanner that can detect contraband in legal mail without jeopardizing confidentiality but—*for no discernable reason*—additionally imposed a policy that chills the Organizations' communications with their clients and interferes with the Organizations' attorney-client relationships.

Defendants offer a limited defense on the merits, and instead focus on procedural arguments in an attempt to avoid an injunction.  For example, Defendants insist the Court re-visit the Organizations' decision to seek relief in this District, where the Organizations are at home and where their cause of action arose.  And though Defendants do not dispute the Organizations are harmed by Defendants' policy, Defendants argue this harm does not justify a preliminary injunction because the instant motion was allegedly filed with unreasonable delay.  But Defendants ignore their time spent considering settlement and their repeated—and still unfulfilled—promises to provide the Organizations with a substantive response.

Ensuring the Organizations' ability to represent their clients detained at BFDF is an interest shared by the Organizations, their clients, the federal government, and the general public. Having failed to respect this ability without court intervention, Defendants should be enjoined from implementing their New Confiscation Policy until resolution of this action.

---

[1] Capitalized terms not otherwise defined in this reply memorandum refer to terms defined in Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Injunction, ECF No. 36.

## II.    THE ORGANIZATIONS DO NOT SEEK A "DISFAVORED" INJUNCTION.

The Organizations seek to enjoin Defendants' New Confiscation Policy and restore the *status quo* legal mail rules under Defendants' own ICE Standards.  Defendants admit the Organizations seek to "require BFDF to *cease* following [its current] mail policy," ECF No. 45 at 14 (emphasis added).  This relief is thus squarely a prohibitory injunction that "forbids or restrains an act," rather than a mandatory injunction "order[ing] an affirmative act or mandat[ing] a specified course of conduct."  *Louis Vuitton Malletier v. Dooney & Bourke*, Inc., 454 F.3d 108, 114 (2d Cir. 2006).

Defendants mistakenly assert that enjoining the New Confiscation Policy would alter the *status quo*.  But the "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy."  *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 274 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019).  The Defendants' contested policy cannot be the *status quo*.

To preliminarily enjoin Defendants, Plaintiffs must show, by a preponderance of the evidence, "(a) irreparable harm and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward" Plaintiffs.  *New York Bay Cap., LLC v. Cobalt Holdings, Inc.*, 456 F.Supp.3d 564, 570 (S.D.N.Y. 2020) (Woods, J.) (citation omitted).

## III.    THE ORGANIZATIONS HAVE SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.

Defendants do not dispute their New Confiscation Policy interferes with the Organizations' communications and relationships with their detained clients, causing continued harm to the Organizations.  Instead, Defendants argue only that the Organizations do not show irreparable harm because they allegedly moved for a preliminary injunction with unreasonable delay.

But this Circuit has criticized using alleged delay to weigh against a finding of irreparable harm in free speech cases. "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury" and courts "ought not to be determining what speech is pressing and what can suffer the law's delay." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quotation omitted). None of the purported First Amendment cases cited by Defendants rebut this principle. *Council for Responsible Nutrition v. James* is irrelevant to First Amendment claims, as the court held no First Amendment claims were at issue prior to considering the effect of delay only on the economic injury claims. No. 24-CV-1881, 2024 WL 1700036, at *9-10 (S.D.N.Y. Apr. 19, 2024). *Shady* and *Costello* are similarly inapposite, as they concern already-complete employment actions challenged after a year, so interim relief would "do nothing to thaw [any] chill." *Shady v. Tyson,* 5 F. Supp. 2d 102, 108-09 (E.D.N.Y. 1998) (citing *Costello v. McEnery*, 767 F. Supp. 72, 78 (S.D.N.Y. 1991)).

Even if delay were relevant to First Amendment claims, the timing of the Organizations' motion is justified. First, Plaintiffs were obliged to investigate the implementation of Defendants' high-level November 2024 policy memorandum through multiple in-person visits to BFDF. *Cf.* ECF No. 41, Ex. 6. Assisting Mr. Hodges with his declaration also took multiple visits, and the Organizations could not use legal mail to discuss the declaration or even obtain a signature in light of Defendant's policy. *See Marks Org., Inc.*, 784 F. Supp. 2d at 333 (delay "caused by good faith efforts to investigate the facts and law" was justified).

Second, Plaintiffs were prepared to file for a preliminary injunction soon after their complaint, but decided to first satisfy Judge Woods's request for an explanation of venue. Addressing a pending issue cannot constitute unjustified delay. *See id.* (delay due to a "strategic decision to resolve the issue of personal jurisdiction before moving forward" was justified).

3

Third, Plaintiffs attempted to engage Defendants in good faith discussions for settlement, waiting due to Defendants' repeated statements that they were considering settlement and would substantively respond soon. *Cf. id.* (delay due to "settlement discussions" was justified). At no time did Defendants suggest their policy is constitutional, and the Organizations had hoped Defendants agreed that effective legal representation of individuals detained at BFDF is in the interest of all parties. Defendants still have not provided a substantive response, and the Organizations filed the instant motion after warning that the Organizations could not continue to wait. None of these circumstances can be construed as unjustified delay.

## IV.    THE ORGANIZATIONS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT AND APA CLAIMS.

### A.  Defendants' New Confiscation Policy Unjustifiably Chills the Organizations' First Amendment Rights to Communicate with Their Clients.

Defendants do not dispute their New Confiscation Policy creates the reasonable belief that ICE officers may read the confidential legal mail of detained individuals, thereby chilling the Organizations' speech to their clients. Instead, Defendants argue their policy is justified because it is an alleged measure to counter contraband that has been implemented at other facilities.

Defendants ignore the four *Turner* factors required to justify their restrictions on First Amendment rights. Other facilities' policies are irrelevant; what matters is that, under the *Turner* factors, the New Confiscation Policy (1) lacks a valid rational connection to Defendants' purported interest; (2) provides the Organizations with no other means to exercise their rights; (3) would not materially impact ICE officers, other inmates, or BFDF resources if enjoined; and (4) is unnecessary because Defendants have alternative means to inspect for contraband that do not infringe on the Organizations' rights. *See Johnson v. Goord*, 445 F.3d 532, 535 (2d Cir. 2006) (applying four *Turner* factors).

4

First, there is no valid, rational connection between the New Confiscation Policy and Defendants' purported concerns with contraband entering BFDF. Defendants' declarant, Mr. Harvey, states that Defendants' November 2023 policy of inspecting, copying, and retaining legal mail sent to BFDF was lifted in March 2024 when BFDF obtained a contraband scanner, but reinstituted and expanded in December 2024 after an investigation determined drugs were entering BFDF through documents exchanged at court. ECF No. 46 at 8-10, ¶¶ 20, 23-25. These alleged findings do not suggest BFDF's scanner was insufficient to inspect legal mail, and give no reason to re-impose a policy of copying and retaining legal mail sent to BFDF. Moreover, Mr. Harvey provides no reason why legal documents exchanged at court or brought by attorneys and case handlers could not simply be sealed and scanned upon arrival at BFDF.

Second, Defendants do not dispute that, under the New Confiscation Policy, the Organizations lack viable means to exercise their constitutional rights. As Professor Wendel explains, written communications form a core basis of the attorney-client relationship and have no viable substitutes. *See* ECF No. 37 at 6-7, ¶¶ 16-19.

Third, restoring the Organizations' First Amendment rights creates no "significant ripple effect on fellow inmates or on prison staff," *Turner v. Safley*, 482 U.S. 78, 90 (1987), because according to Mr. Harvey, any increase in contraband at BFDF in November 2024 was attributable to documents exchanged at court, not to legal mail sent to or exchanged in-person at BFDF. ECF No. 46 at 9-10, ¶ 23.

Fourth, Defendants' New Confiscation Policy is "an exaggerated response to prison concerns" because "obvious, easy alternatives" would address Defendants' concerns. *Turner*, 482 U.S. at 90. As described above, Defendants can address any contraband concerns with their scanner, and Defendants do not dispute that ICE has several other reasonable responses

5

available, such as more stringently verifying a communicant's claim to special status.  *See* ECF No. 36 at 18-19.  There is no need for the intrusive New Confiscation Policy.

The cases cited by Defendants do not justify their policy of taking legal mail outside of the presence of individuals detained at BFDF, either for indefinite retention in personal bins or for copying during in-person legal visits.  Defendants mistake the facts of *Bray* and *Levine*, which concern policies under which original legal mail was copied in the presence of inmates, shredded, and disposed of—*not* retained outside of the presence of incarcerated individuals. *Bray v. Mazza*, No. 4:21-CV-00119, 2022 WL 17836601, at *1 (W.D. Ky. Dec. 21, 2022); *Levine v. Bradshaw*, No. 22-CV-80321, 2023 WL 11885182, at *1 (S.D. Fla. July 6, 2023).  The *Strebe* court considered a similar policy applying only to general correspondence, not legal mail. *Strebe v. Kanode*, No. 7:17-CV-00321, 2018 WL 4473117, at *2 (W.D. Va. Sept. 18, 2018). Unlike the *pro se* litigants in these unpublished cases, Plaintiffs also identify a ready alternative to Defendants' policy—BFDF's scanner.

Moreover, Defendants disregard Mr. Hodge's sworn statement that, under Defendants' New Confiscation Policy, ICE officials regularly use copying as an opportunity to read legal mail. Mr. Hodge has seen this firsthand over a dozen times.  ECF No. 39 at 3, ¶ 14.  *Cf., e.g., Bradshaw v. City of New York*, No. 15-CV-9031, 2017 WL 325260, at *7 (S.D.N.Y. Jan. 23, 2017) (three instances of interference with legal mail is enough "to suggest a pattern rather than an isolated incident").  Neither Defendants nor Mr. Harvey claim these incidences are irregular, nor do they assert Mr. Hodge is mistaken.  *Cf.* ECF No. 46 at 12-13, ¶ 28.  Instead, they state only that Mr. Harvey did not verify these incidents with surveillance footage, though Mr. Harvey could do so using BFDF's footage and logbooks of inspections of Mr. Hodge's mail.  ECF No. 46 at 12-13, ¶ 28.

Defendants assert the New Confiscation Policy does not allow ICE officials to read legal

mail, but this is beside the point; the Organizations and their clients reasonably believe that

Defendants' New Confiscation Policy gives ICE officials the opportunity to read legal mail, and

those officials regularly do so.  ICE officers do not follow the policy as written.  As a further

example, Mr. Hodge has also seen firsthand that ICE officers do not seal original legal mail after

copying it.  ECF No. 39 at 3, ¶ 11.  Mr. Harvey does not dispute this; he instead states only that

legal mail "would be" sealed under the policy.  *See* ECF 46, ¶¶ 10, 13, 24.  Mr. Harvey did not

provide evidence on this topic despite his access to surveillance footage that would verify

Mr. Hodge's observations.

In sum, Defendants' New Confiscation Policy creates, in violation of the First Amendment,

"the possibility that a pre-arraignment detainee could believe [an officer] is monitoring their

communications and the consequent chilling effect of that belief."  *Grubbs v. O'Neill*, 744 F.

App'x 20, 23 (2d Cir. 2018).  Simply put, "any reasonable person would think twice before

continuing to participate" in such constitutionally protected correspondence with BFDF clients

when confidential legal mail is subject to inspection, copying, and retention by ICE officers.

*Black Lives Matter v. Town of Clarkstown*, 354 F.Supp.3d 313, 324 (S.D.N.Y. 2018).

### B.  Defendants' New Confiscation Policy is Arbitrary, Capricious, and Not in Accordance with the Law.

Defendants do not dispute that they must follow their own procedures, and do not argue that

the New Confiscation Policy complies with the ICE Standards.  Instead, Defendants seek

deference to enact any contraband policy they see fit.  This request lacks legal support and

expects the Court to turn a blind eye to Defendants' facially inconsistent justifications.

First, the *Accardi* doctrine requires Defendants to follow their own internal procedures.

*Damus v. Nielsen*, 313 F. Supp. 3d 317, 336-38 (D.D.C. 2018) (requiring ICE to follow its Parole

Directive because, under *Accardi*, "a federal agency must adhere firmly to self-adopted rules by which the interests of others are to be regulated"). As the Organizations have explained, the ICE Standards are precisely the kind of internal procedure that Defendants must follow. *See* ECF No. 36 at 20-21 (citing *Innovation Law Lab v. Nielsen*, 342 F.Supp.3d 1067, 1079 (D. Or. 2018)).

<u>Second</u>, Defendants do not claim to have followed their own ICE Standards, nor can they. As Plaintiffs have explained, those standards expressly state that ICE staff "shall neither read <u>*nor copy*</u> special correspondence or legal mail." PBNDS § 5.1(V)(F)(2) at 360 (emphasis added). These standards account for "exception[al] . . . security purposes" concerning legal mail, requiring verification of communicant status and limiting the period of retaining such correspondence to 48 hours. *Id.*, § 5.1(V)(D)(3) at 359. Any authority by which ICE facilities implement procedures to inspect for contraband is subject to these express limitations.

Instead, Defendants mistakenly assert the Court must conduct only a "narrow and deferential" review of their reasons for deviating from the ICE Standards. But "[w]hile courts have expressed reluctance to 'review the merits of decisions made within the area of discretion delegated to administrative agencies,' they have 'insisted that where the agencies have laid down their own procedures and regulations, those procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved.'" *Velesaca v. Decker*, 458 F. Supp. 3d 224, 236 (S.D.N.Y. 2020) (quotation omitted). Defendants do not cite a single *Accardi* case to establish deference, but instead rely on cases concerning deference to agency adjudication and agency rule-making. *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (administrative adjudication); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) (agency rulemaking); *Natural Resources Defense Council v. EPA*, 658 F.3d 200, 215

(2d Cir. 2011) (agency execution of Congressionally mandated risk assessment).  These cases are irrelevant to Defendants' failure to follow their own standards.

Even if the Defendants' deviation from the ICE Standards were owed some deference (it is not), their facially unjustified policy cannot withstand even limited scrutiny.  As described above, BFDF has a scanner that can inspect legal mail without copying and retaining it.  The BFDF's November 2024 investigation allegedly identified concerns only with contraband contained in documents exchanged at court.  That alleged finding does not justify the hand-inspection, copying, and retention of legal mail sent or brought to BFDF by the Organizations.

Finally, for these same reasons Defendants' New Confiscation Policy is not in accordance with the law.  Under *Turner*, Defendants are not entitled to an overbroad, unjustified policy, particularly when obvious alternatives like BFDF's scanner are readily available.

## V.    PROTECTING THE ORGANIZATIONS' FIRST AMENDMENT RIGHTS OUTWEIGHS ANY POTENTIAL HARDSHIP TO DEFENDANTS.

"[S]ound legal advice . . . depends upon the lawyer's being fully informed by their client," but Defendants' New Confiscation Policy interferes with communications between the Organizations and their clients.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Given this serious interference, a preliminary injunction serves the substantial interests of the Organizations, their clients, the federal government, and the general public.

Defendants are wrong to suggest the preliminary injunction would impose anything but a minor financial and administrative burden on Defendants.  Even if Defendants' policy is motivated by concerns related to contraband, returning to the *status quo* under the ICE Standards in no way prevents Defendants from using their scanner to inspect legal mail for contraband. Defendants also do not dispute that other, non-intrusive means of inspecting for contraband are also available, such as more stringently verifying a communicant's claim to special status.  *See*

9

PBNDS § 5.1(V)(F)(2) at 360.  Granting a preliminary injunction will impose only a *de minimus* burden on Defendants that requires no bond, and will support the balance of equities by restoring the Organizations' *status quo* ability to communicate with their clients detained at BFDF, pending resolution.

## VI.    DEFENDANTS HAVE SHOWN NO REASON TO DELAY THE ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF.

The Court already instructed the parties on May 30, 2025 that it will resolve the instant motion prior to considering Defendants' motion to transfer.  Despite this instruction, Defendants have again asked the Court to decide transfer first, but fail to support this request.  Unlike *Lyon v. Cornell Univ.* cited by Defendants, this Court is not considering a summary judgment motion with disputed issues of fact that will soon go to trial.  No. 97-CV-7070, 1998 WL 226193, *2 (S.D.N.Y. May 4, 1998).  And in *Baldwin Hardware Corp. v. Harden Indus., Inc.*, the court declined to issue a preliminary injunction *after* it had decided to transfer the case, and gave no discussion of which motion takes priority.  663 F. Supp. 82, 86 (S.D.N.Y. 1987).

Defendants' request also takes improper form.  Defendants, aware of the Court's position for weeks, elected to respond in substance to the instant motion rather than seek a motion to stay. Defendants provide no reason for the Court to depart from its ruling, and no reason why a different court is better suited to consider this motion.[2]  Importantly, Defendants have produced just one witness, a federal officer, demonstrating that witness convenience does not require transfer by a clear and convincing showing.  Defendants' request should be rejected.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be granted.

---

[2] As the Organizations have explained in extensive briefing, they are entitled to bring this action in their home district. *See* ECF Nos. 21, 32.

DATED: June 17, 2025

Respectfully Submitted,

  /s/ Tyler Jankauskas  
Tyler Jankauskas

Sarah T. Gillman  
Sarah E. Decker  
ROBERT F. KENNEDY HUMAN RIGHTS  
88 Pine St., Ste. 801  
New York, NY 10005  
(646) 289-5593  
gillman@rfkhumanrights.org  
decker@rfkhumanrights.org

Tyler Jankauskas  
Jordan Joachim  
Casandra Delgado  
COVINGTON & BURLING LLP  
620 Eighth Avenue  
New York, New York 10018-1405  
(212) 841-1000  
tjankauskas@cov.com  
jjoachim@cov.com  
cdelgado@cov.com

Kerry Battenfeld  
Jillian Nowak  
PRISONERS' LEGAL SERVICES OF NEW YORK  
41 State St., Ste. M112  
Albany, NY 12207  
(518) 445-6050  
kbattenfeld@plsny.org  
jnowak@plsny.org

Amy Belsher  
NEW YORK CIVIL LIBERTIES UNION  
125 Broad St., Fl. 19  
New York, NY 10004  
(212) 607-3300  
abelsher@nyclu.org

11

**Certificate of Compliance**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Reply Memorandum is 10 pages and contains 3,157 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Practices in Civil Cases of Judge Valerie Figueredo at Section III(b).

Dated: New York, New York
　　　　June 17, 2025

　　　　　　　　　　　　　　　　　　　　　　　  _/s/ Tyler Jankauskas_

　　　　　　　　　　　　　　　　　　　　　Tyler Jankauskas
　　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　　620 Eighth Avenue
　　　　　　　　　　　　　　　　　　　　　New York, New York 10018-1405
　　　　　　　　　　　　　　　　　　　　　(212) 841-1000
　　　　　　　　　　　　　　　　　　　　　tjankauskas@cov.com